LAWRENCE v SECOND INJURY FUND

Docket No. 148065. Submitted February 1, 1994, at Lansing. Decided
  April 5, 1994, at 9:25 A.M. Leave to appeal sought.

  Victoria J. Lawrence sought workers' compensation benefits after
    injuring a knee in the course of employment by Prompt An-
    swering/DeBonte Electric. At the time of the injury, Lawrence
    also worked at a drive-in theater and continued to do so after
    the injury. A hearing officer at the Bureau of Workers' Disabil-
    ity Compensation ordered Prompt Answering to pay benefits
    and, pursuant to MCL 418.372(1)(b); MSA 17.237(372)(1)(b),
    ordered the Second Injury Fund to reimburse Prompt Answer-
    ing for a portion of the benefits. The Workers' Compensation
    Appeal Board affirmed on appeal. The Second Injury Fund
    appealed by leave granted.

  The Court of Appeals *held:*

  Section 372(1) requires that the workers' compensation bene-
    fits of an injured worker holding more than one job at the time
    of an injury be computed on the basis of wages earned in all
    jobs held on the date of the injury. Section 372(1)(b) provides
    that if, as here, the employment in which the injury was
    sustained provided eighty percent or less of the workers' aver-
    age weekly wage at the time of the injury, the employer
    providing such employment is liable for a portion of the work-
    er's weekly benefits in the same ratio as the average weekly
    wage from the employment in which injury was sustained
    bears to the total weekly wages, with the Second Injury Fund
    being liable for the rest.

  Affirmed.

WORKERS' COMPENSATION — MULTIPLE EMPLOYMENT — COMPUTATION
  OF BENEFITS.

  The workers' compensation benefits of an injured worker holding
    more than one job at the time of an injury is to be computed on
    the basis of wages earned in all jobs held on the date of the
    injury; if the employment that caused the injury provided more

REFERENCES

Am Jur 2d, Workers' Compensation § 230.
See ALR Index under Workers' Compensation.

than eighty percent of the worker's average weekly wages, the employer providing such employment must pay all of the worker's weekly workers' compensation benefits; if the employment that caused the injury provided less than eighty percent of the worker's average weekly wages, the employer providing such employment is liable for a portion of the worker's weekly benefits in the same ratio as the average weekly wage from that employment bears to the total weekly wages, with the Second Injury Fund being liable for the rest of the weekly benefits (MCL 418.372[1]; MSA 17.237[372][1]).

*William R. Farley,* for Victoria J. Lawrence.

*Cholette, Perkins & Buchanan* (by *Stephen C. Oldstrom*), for Prompt Answering/DeBonte Electric and Ohio Casualty Company.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Morrison Zack,* Assistant Attorney General, for Second Injury Fund.

Before: McDONALD, P.J., and FITZGERALD and M. F. SAPALA,* JJ.

PER CURIAM. The Second Injury Fund appeals by leave granted a December 11, 1991, opinion and order of the Workers' Compensation Appeal Board, which required the fund to reimburse plaintiff's employer, Prompt Answering/DeBonte Electric (hereinafter Prompt), for a portion of compensation benefits it pays plaintiff.

Plaintiff injured her right knee on June 15, 1985, while working for Prompt. At that time, plaintiff also worked at the Plainfield Drive-In selling movie tickets. The knee injury prevented plaintiff from continuing her employment with Prompt, but did not affect her ability to sell tickets at the drive-in because she was able to sit while working.

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

A hearing referee awarded plaintiff disability compensation benefits, through July 29, 1985, the date at which he found plaintiff's disability ceased. The referee also found that the injury at Prompt did not disable plaintiff from her job at the drive-in. However, the referee ordered the fund to reimburse Prompt for fifty-two percent of the weekly benefits it paid plaintiff, pursuant to MCL 418.372(1)(b); MSA 17.237(372)(1)(b).

On appeal, the appeal board determined that plaintiff's disability continued and awarded continuing benefits. The board affirmed the hearing referee's determination that the disability did not affect plaintiff's ability to work at the drive-in. Accordingly, the board apportioned liability for the payment of compensation benefits between Prompt and the Second Injury Fund pursuant to § 372(1)(b).

The fund argues that the reimbursement statute cannot be applied without regard for the basic workers' compensation principle that benefits are awarded not for an injury or loss of wages alone, but only for loss of wage-earning capacity. Because plaintiff has not lost her wage-earning capacity at the drive-in, the fund argues, she is not entitled to benefits based on her wages at the drive-in, and § 372 is inapplicable.

The principal parties agree that, under prior law, a claimant engaged in more than one job (dual employment) was entitled to compensation based on the earnings only in the job in which the worker was injured and not based on the worker's total income from all employment. See *Bowles v James Lumber Co,* 345 Mich 292; 75 NW2d 822 (1956); *Buehler v Univ of Michigan,* 277 Mich 648; 270 NW 171 (1936); *Trejo v Michigan Sugar Co,* 133 Mich App 753; 350 NW2d 314 (1984). The parties also agree that 1980 PA 357 altered prior

law by providing for compensation based on wages in all employment. Section 371(2) was amended to read, "As used in this act, 'average weekly wage' means the weekly wage earned by the employee at the time of the employee's injury *in all employment* . . . ." MCL 418.371(2); MSA 17.237(371)(2). (Emphasis added.)

The statute also added § 372 to provide for an apportionment of liability based on all wages. Section 372(1)(a) now reads, "If the employment which caused the personal injury or death provided more than 80% of the injured employee's average weekly *wages* at the time of the personal injury or death, the insurer or self-insurer is liable for all of the weekly benefits." MCL 418.372(1)(a); MSA 17.237(372)(1)(a). (Emphasis added.) Section 372(1)(b) was added, which reads:

> If the employment which caused the personal injury or death provided 80% or less of the employee's average weekly wage at the time of the personal injury or death, the insurer or self-insurer is liable for that portion of the employee's weekly benefits as bears the same ratio to his or her total weekly benefits as the average weekly wage from the employment which caused the personal injury or death bears to his or her total weekly wages. The second injury fund is separately but dependently liable for the remainder of the weekly benefits. The insurer or self-insurer has the obligation to pay the employee or the employee's dependents at the full rate of compensation. The second injury fund shall reimburse the insurer or self-insurer quarterly for the second injury fund's portion of the benefits due the employee or employee's dependents. [MCL 418.372(1)(b); MSA 17.237(372)(1)(b).]

*Trejo v Michigan Sugar Co, supra,* followed the old statute, but noted that the amendments were designed to make a change:

Plaintiff argues that the result reached here is contrary to the intent of the Legislature. However, if the Legislature had intended that plaintiff's compensation be computed based upon his earnings at both Michigan Sugar and General Motors, it seems the statute would have long since been amended to avoid the interpretation given by the *Buehler* Court. As both parties note, the Legislature has recently amended the statute, effective January 1, 1982, providing for the measure of compensation based upon the average weekly wage in all of the injured worker's employments. The fact that the previous statute, as interpreted by *Buehler,* has been allowed to stand since 1936 is an indication that the true legislative intent was properly interpreted by the *Buehler* Court. We also affirm the WCAB on this issue. [133 Mich App 761.]

In *Finkbiner v ITT Bldg Service,* 189 Mich App 560; 474 NW2d 148 (1991), we held that 1980 PA 357 applied prospectively only. In doing so, we also referred to the statute as an act designed to increase benefits. We said:

Before the enactment of 1980 PA 357, the weekly benefits of an injured employee holding more than one job were computed using only earnings from the job which gave rise to the injury. As amended, § 371(1) requires computation of such an employee's weekly benefits on the basis of wages earned in all jobs held on the date of injury. While § 372 does not affect the employee's rights to compensation or the amount thereof, it does alter the employers' and the Second Injury Fund's liabilities. These provisions clearly are substantive changes in the law and affect various parties' rights and obligations. [189 Mich App 563.]

The fund's argument is rejected. Its interpretation of the statute would contravene legislative intent. We have already recognized that 1980 PA

357, effective January 1, 1982, added § 372 to change the past practice under which the benefit for an employee working two jobs was based only on the wage in the work in which the employee was injured. The statute worked a substantive change in the law. *Finkbiner, supra* at 563.

Section 372 must also be read in conjunction with §§ 371(1) and (2), which were amended by 1980 PA 357. Section 371(1) expands the definition of "weekly loss in wages" to include the "employee's earning capacity in the employments covered by this act." (Emphasis added.) Similarly, § 371(2) defines "average weekly wage" to include wages "in all employment."

In addition, the fund's interpretation of the act overlooks the fact that § 372(1) contemplates that the compensable injury disabled the employee in only one of the employments by referring throughout the section to the "employment" in which the injury occurred, thereby recognizing that the injury does not have to disable the worker in all employments. Thus, § 372(1) refers to "the employer in whose employment the injury or injury resulting in death occurred." Section 372(1)(a) similarly refers "to the employment which caused the personal injury or death." And § 372(1)(b) refers to "the employment which caused the personal injury or death." Section 372 suggests no exception where the injury disables in only one employment; it provides just the opposite.

The parties agree that the former method of computing benefits was inequitable and that 1980 PA 357 was intended to remedy the inequity. The fund's position, however, reverts to the former practice of basing an injured worker's compensation benefits on wages earned in the employment in which the worker was injured if the worker is not disabled from all employment. If the legisla-

tion was designed to increase the compensation benefit for employees employed in dual employment, it should be applied simply as a benefit calculation provision, without regard to the separate principle that disability requires a limitation of wage-earning capacity. MCL 418.301(4); MSA 17.237(301)(4). In other words, loss of wage-earning capacity determines whether a worker is disabled, but the disabled worker's benefit is determined under § 372. The two principles are distinct. As the Supreme Court pointed out in *Leskinen v Employment Security Comm,* 398 Mich 501, 508-509; 247 NW2d 808 (1976):

> *Eligibility* for benefits under the act is established when an employee proves that he has suffered a personal injury which arose "out of and in the course of his employment." It is only after this threshold determination that the *amount* of benefits is then computed. [Emphasis in original; citations omitted.]

The fund claims we decided this question in its favor in *Downs v Great Lakes Recreation Co,* unpublished opinion per curiam of the Court of Appeals, decided May 20, 1992 (Docket No. 129315). *Downs* is distinguishable, and as an unpublished opinion, it certainly is not binding precedent under either MCR 7.215(C)(1) or Administrative Order No. 1990-6, as extended by the Supreme Court.

The decision of the appeal board is affirmed.