LAWRENCE v TOYS R US

Docket No. 99983. Argued January 9, 1996 (Calendar No. 2). Decided
    July 31, 1996.

Victoria J. Lawrence was awarded worker's compensation as a result
    of an injury sustained in the course of her employment with
    Prompt Answering/DeBonte Electric. The Worker's Compensation
    Appeal Board ordered that, in computing her benefits, her average
    weekly wage was to be determined by including both wages from
    her employment with Prompt, which she could not continue
    because of her disability, and wages from her part-time seasonal
    employment, which she was able to continue. The board further
    provided that the Second Injury Fund was required to reimburse
    Prompt for a proportionate share of the benefits pursuant to § 372
    of the worker's compensation act unless the earnings from Prompt
    comprised more than eighty percent of her combined earnings
    from both jobs. The Court of Appeals, MCDONALD, P.J., and
    FITZGERALD and M. F. SAPALA, JJ., affirmed in an opinion per curiam
    (Docket No. 148065). The Second Injury Fund appeals.

Section 372 requires the employer under whom the injury
    occurred to pay the portion of the benefits equal to the ratio that
    the wages paid by the injury-employer for which benefits are paya-
    ble bears to the total wages for which benefits are payable. Thus,
    the fund is only subject to liability for benefits in respect to the
    wage-earning capacity lost at the concurrent employment.

1. The "average weekly wage" is to be determined under § 371(2)
    of the WDCA. Neither the definition of "disability" nor judicial deci-
    sions concerning what constitutes wage loss are pertinent in deter-
    mining the "average weekly wage" once it is determined that the
    worker is disabled. When disability has been determined, computa-
    tion of the average weekly wage is statutorily prescribed in § 371
    and does not involve a further determination or redetermination of
    the extent of the worker's disability in dual employment. In enact-
    ing that the "average weekly wage" means weekly wages earned by
    the worker at the time of injury in all employment, the Legislature

did not distinguish between dual employment in which a worker was injured or disabled and dual employment in which a worker was not.

2. Apportionment in a dual employment situation is controlled by § 372. The WCAB appears to have construed § 372 to mean that the Second Injury Fund could bear some portion of the liability for benefits payable to the plaintiff, even if the magistrate determines that she has not lost any earning capacity in respect to the wages received from Plainfield. This construction of the act exposes the fund to liability for benefits being paid solely to compensate the plaintiff for the incapacity to earn the wages paid by Prompt. The legislative history of subsection 372(1)(b) is clear, the Second Injury Fund is liable only if the employee experiences wage loss from employment other than that in which the injury occurs and that employment contributed more than one-fifth of the employee's average weekly wage.

3. The Legislature amended § 372 to apportion liability between the injury-employer and the Second Injury Fund. This apportionment places responsibility on the injury-employer for the wages that were lost while the worker was in its employ, yet protects that employer from loss for hiring a worker with concurrent employment. The approach stated by the WCAB threatens to distort the balance struck by the Legislature. The Second Injury Fund's responsibility will arise only if Prompt's contribution to the average weekly wage, computed by including the wages from both employments, is determined to have been less than eighty percent. In that case, Prompt will be solely responsible for shouldering the burden of the benefits attributable to its share of the wages for which the plaintiff is receiving benefits, but is entitled to reimbursement from the fund for any additional benefits.

Justice LEVIN, joined by Chief Justice BRICKLEY, and Justice CAVANAGH, additionally stated:

"Disability" and "wage earning capacity," as used in the act, are interrelated but different concepts. A worker is not entitled to benefits unless disabled. Wage-earning capacity, in addition to other possible applications, plays a specific role in determining the amount of benefits in a partial disability case.

The second phase of the calculation of benefits for a partially disabled worker requires a determination of the wages the worker was able to earn after the injury. Wages alone can overvalue an employee's worth in the labor market if they are temporary and inflated, or undervalue it if the worker is employed at work below skill level. The full severity of an injury may not reveal itself immediately after it occurs, or an employee may struggle along with the

injury before determining it is impossible to go on. Potential ability to work, if uncoupled with an actual opportunity to exploit that potential, leaves the employee unable to earn wages. In this case, the range of activities the plaintiff is physically able to perform has been severely limited. Although, immediately after the injury, she actually continued to earn wages at her part-time summer job, it does not follow that she was able to earn replacement wages, as that term is used in the act. The record indicates that she was diligent in seeking other employment, with the result that Prompt was entitled to substantial credits for wages earned by her in such other employment.

The purpose of the 1980 amendment was to assure that a disabled worker who had been engaged in dual employment before an injury would be entitled, as set forth in § 361, to benefits equal to eighty percent of the difference between the after-tax average weekly wage from dual employment before the injury and the after-tax average weekly wage that the worker is able to earn after the injury. In this case although Prompt would be entitled, pursuant to § 361, to a reduction of its liability for any wages the plaintiff actually earned, the WCAB order does not require the magistrate to determine whether she retains any residual earning capacity, which also would reduce the amount of the award, but not Prompt's liability. In sum, the wages the plaintiff is able to earn is a question of fact, to be resolved by the magistrate after considering the full range of factors. The amount of wages she is able to earn is neither constrained nor controlled by the wages she actually earned following the injury.

Justice BOYLE, joined by Justice MALLETT, concurring in part, agreed with parts I, II, III(A), and IV of the lead opinion.

Affirmed in part, reversed in part, and remanded.

Justice WEAVER, joined by Justice RILEY, concurred in part that the Second Injury Fund is only liable under § 372, the apportionment provision of the Worker's Disability Compensation Act, if the employee experiences wage loss from employment other than that in which the injury occurs, and that employment contributed more than one-fifth of the employee's average weekly wage, but dissented in part because it is not necessary to remand this case.

The magistrate found that the plaintiff's injury rendered her compensably disabled from one employment but not compensably disabled from her concurrent employment. The magistrate correctly concluded that the plaintiff was partially disabled because she retained a wage-earning capacity in work suitable to her qualifications and training. Further, the WCAB agreed with these findings and conclusion. The majority's decision to remand is functionally

equivalent to a reversal of the finding of partial disability because it ignores both the magistrate's and the WCAB's findings that the plaintiff retained a wage-earning capacity.

In this case, the magistrate found that the plaintiff is not compensably disabled from sedentary employment. It is fundamentally inconsistent with Michigan's wage-loss system to compensate an employee when the subsequent loss of a second job is in no way related to the compensable disability and when the employee retains a wage-earning capacity for other work comparable to the second job. It is not the purpose of the Michigan's Worker's Disability Compensation Act to serve as another form of unemployment insurance.

204 Mich App 498; 516 NW2d 114 (1994) affirmed in part and reversed in part.

*William R. Farley* for the plaintiff.

*Stephen C. Oldstrom* for Toys R Us.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Ray W. Cardew, Jr.*, and *Morrison Zack*, Assistant Attorneys General, for the Second Injury Fund.

LEVIN, J. Victoria J. Lawrence was injured while working for Prompt Answering/DeBonte Electric. Her injury prevented her from continuing her employment with Prompt, but did not prevent her from continuing her dual employment at Plainfield Drive-In where, at the time of the injury, she had part-time seasonal employment in the sedentary job of selling movie tickets.

The questions presented are whether

- the wages Lawrence earned at Plainfield were properly included by the magistrate and the WCAB in computing Lawrence's "average weekly wage" for the purpose of determining the benefits payable to her;

- Lawrence may have lost the earning capacity represented by the wages she earned at Plainfield although she continued to be there employed immediately after she was injured at Prompt; and

- the Second Injury Fund may be subject to liability for a portion of the benefits payable to Lawrence in respect to the wages at Prompt even if it is determined that Lawrence retains earning capacity in respect to her wages at Plainfield.

We agree with the Court of Appeals,[1] the Worker's Compensation Appeal Board, and the referee—who all ruled that the 1980 amendments[2] of §§ 371[3] and 372[4] of the Worker's Disability Compensation Act,[5] providing that the average weekly wage means the weekly wage earned by the worker at the time of injury "in all employment,"[6] mean both the wages earned in the employment (at Prompt) in which the worker was disabled and in an employment (at Plainfield) in which she was not disabled—that the WCAB properly included the wages Lawrence earned in all employments in computing her average weekly wage.

Neither the magistrate nor the WCAB made findings concerning Lawrence's ability to earn the wages she received from Plainfield. We conclude that whether she lost her entire "earning capacity" remains a question of fact for the magistrate.

---

[1] 204 Mich App 498; 516 NW2d 114 (1994).
[2] 1980 PA 357.
[3] MCL 418.371; MSA 17.237(371). See n 12 for text.
[4] MCL 418.372; MSA 17.237(372). See n 9 for text.
[5] 1969 PA 317.
[6] See n 12 for text of subsection 371(2).

The WCAB found that the Second Injury Fund would be liable for a portion of the benefits paid to Lawrence, even if that portion is being paid to replace wages lost from the employment at Prompt in which she was injured. We disagree, and conclude that *in such a case* the Second Injury Fund is not subject to liability for the payment of any benefits replacing the wages Lawrence earned during her employment, at Prompt, in which she was injured.

I

The WCAB found that Lawrence was partially disabled by June 15, 1985, from her employment with Prompt as a result of a knee injury,[7] and entered an open award of benefits until the further order of the WCAB. The WCAB ordered that, in computing the weekly compensation benefit, Lawrence's average weekly wage was to be determined by including both wages from her employment with Prompt, which she could not continue because of her disability, and wages from her employment with Plainfield, which she had been able to continue. The order provided that Prompt could take credit, pursuant to the formula contained in subsection 361(1) of the act,[8] against the

---

[7] The knee had earlier been injured in July, 1982, during Lawrence's employment with Toys R Us.

Lawrence began working for Prompt in January, 1983, and for Plainfield in the summer of 1983. She continued to work for Plainfield during the summers of 1984 and 1985.

[8] While the incapacity for work resulting from a personal injury is partial, the employer shall pay, or cause to be paid to the injured employee weekly compensation equal to 80% of the *difference between the injured employee's after-tax average weekly wage before the personal injury and the after-tax average weekly wage which the injured employee is able to earn after the personal injury,* but not more than the maximum weekly rate of compensation, as determined under section 355. Compensation shall be paid

weekly benefits for any wages Lawrence had "actually been able to earn" after June 15, 1985.

The WCAB order further provided that the Second Injury Fund must reimburse Prompt for a share of the benefits proportionate to the ratio Lawrence's preinjury wages at Plainfield bear to her total average weekly wage, unless Lawrence's earnings from Prompt comprised more than eighty percent of her combined earnings from Prompt and Plainfield, in which event the Second Injury Fund would not be required to provide any reimbursement to Prompt.[9] The Court of Appeals affirmed.

---

for the duration of the disability. [MCL 418.361(1); MSA 17.237(361)(1) (emphasis added).]

[9] If an employee was engaged in more than 1 employment at the time of a personal injury or a personal injury resulting in death, the employer in whose employment the injury or injury resulting in death occurred is liable for all the injured employee's medical, rehabilitation, and burial benefits. Weekly benefits shall be apportioned as follows:

(a) If the employment which caused the personal injury or death *provided more than 80% of the injured employee's average weekly wages at the time of the personal injury or death,* the insurer or self-insurer is liable for all of the weekly benefits.

(b) If the employment which caused the personal injury or death provided *80% or less of the employee's average weekly wage at the time of the personal injury or death,* the insurer or self-insurer is liable for that portion of the employee's weekly benefits as bears the same ratio to his or her total weekly benefits as the average weekly wage from the employment which caused the personal injury or death bears to his or her total weekly wages. The second injury fund is separately but dependently liable for the remainder of the weekly benefits. The insurer or self-insurer has the obligation to pay the employee or the employee's dependents at the full rate of compensation. The second injury fund shall reimburse the insurer or self-insurer quarterly for the second injury fund's portion of the benefits due the employee or the employee's dependents. [MCL 418.372(1); MSA 17.237(372)(1) (emphasis added).]

II

This Court granted the application of the Second Injury Fund for leave to appeal. Lawrence had responded to the application with a motion to dismiss as moot. The order granting leave to appeal states that the motion "remains pending. The parties are directed to include mootness in the issues to be briefed."[10]

Lawrence contends that the issues are moot, and the appeal should be dismissed because the sole issue presented is whether the Second Injury Fund is required to reimburse Prompt under the circumstance that Lawrence was able, after injury, to continue working for Plainfield. Lawrence asserts that computing Lawrence's average weekly wage by including her earnings from Plainfield, in the manner required by the WCAB, results in Prompt's share being eighty-three percent, with the further result that Prompt is required to pay the entire benefit and the Second Injury Fund nothing. Subsection 372(1) (see n 9 for text) provides that if the employment that caused the personal injury provided more than eighty percent of the injured employee's average weekly wages at the time of the injury, the employer is liable for all the weekly benefits. Lawrence points out that Prompt has not appeared in this Court, and asserts that Prompt does not seek reimbursement from the fund.

The Second Injury Fund contends that the issue may not be moot, and that it may, under the Court of Appeals opinion, have reimbursement liability to Prompt. It further contends that even if an issue is moot, this Court may address the issue if it is of pub-

---

[10] 450 Mich 852 (1995).

lic significance and is likely to recur, yet may evade judicial review, citing *In re Midland Publishing Co, Inc*, 420 Mich 148, 151-152, n 2; 362 NW2d 580 (1984), and *Pearson v Macomb Co Election Comm*, 199 Mich App 170, 171; 500 NW2d 746 (1993).

This Court has decided to address this appeal on the merits.

III

The Second Injury Fund states that the issue is the validity of imposing reimbursement liability on the fund pursuant to § 372 "for any portion of plaintiff's weekly workers' compensation benefit given her disability from the job [with Prompt] in which she was injured but not from her concurrent employment" with Plainfield.

The fund acknowledges that Lawrence has been found to be disabled, but argues that her "disability has been finally determined to extend only to her employment by Prompt, and not to her concurrent employment." It asserts that Lawrence has suffered no wage loss from her concurrent employment, and therefore "Prompt's obligation to pay weekly benefits is based solely upon [Lawrence's] wage loss, from Prompt." It argues that a worker is entitled to benefits only where there has been a loss of wage-earning capacity, citing statutory definitions of "disability"[11] and this Court's decisions in *Sobotka v Chrysler Corp (After Remand)*, 447 Mich 1; 523 NW2d 454 (1994),

---

[11] As used in this chapter, "disability" means a limitation of an employee's wage earning capacity in work suitable to his or her qualifications and training resulting from a personal injury or work related disease. The establishment of disability does not create a presumption of wage loss. [MCL 418.301(4); MSA 17.237(301)(4).]

and *Michales v Morton Salt Co*, 450 Mich 479; 538 NW2d 11 (1995), discussing "disability" and "wage loss."

The fund further contends that the purpose of the 1980 amendments was solely to address the inequity of the result of this Court's decision in *Buehler v Univ of Michigan*, 277 Mich 648; 270 NW 171 (1936), in which a worker was injured while working a part-time job and was disabled thereby from both the part-time job and a full-time job, and yet was held to be entitled to benefits only on the basis of her earnings from the part-time job. The fund asserts that the Legislature did not intend that the 1980 amendments would apply except where, as in *Buehler*, the worker was disabled from all dual employment.

The parties agree that Lawrence was disabled—that she suffered a work-related injury in the course of her employment that resulted in some loss of wage-earning capacity. The parties also agree that Lawrence was not disabled from her employment at Plainfield.

"Disability" and "wage earning capacity," as those terms are used in the act, are interrelated but different concepts. A worker is not entitled to benefits unless he is "disabled." "Wage earning capacity," in addition to other possible applications, plays a specific role in determining the amount of benefits in a partial disability case.

Because Lawrence retained some ability to work, Lawrence was properly determined by the magistrate and the WCAB to be partially disabled. The amount of her benefits is, accordingly, to be determined under § 361. Pursuant to § 361, Lawrence is entitled to her preinjury "average weekly wage" less the wages she is "able to earn" after the injury.

A

The "average weekly wage" is to be determined under subsection 371(2) of the WDCA, which provides:

> As used in this act, "average weekly wage" means the weekly wage earned by the employee at the time of the employee's injury in all employment, inclusive of overtime, premium pay, and cost of living adjustment, and exclusive of any fringe or other benefits which continue during the disability.

As the fund contends, this section was amended in 1980 to overrule the result in *Buehler* by providing in subsection 371(2), that the " 'average weekly wage' means the weekly wage earned by the employee at the time of the employee's injury *in all employment.*"[12] (Emphasis added.)

Neither the definition of "disability" nor judicial decisions concerning what constitutes "wage loss" are pertinent in determining the "average weekly wage" once it is determined, as it was here, that the worker is disabled. When disability has been determined, the computation of the average weekly wage is statutorily prescribed in § 371 and does not involve a further

---

[12] As used in this act, "average weekly wage" means the weekly wage earned by the employee at the time of the employee's injury *in all employment,* inclusive of overtime, premium pay, and cost of living adjustment, and exclusive of any fringe or other benefits which continue during the disability. Any fringe or other benefit which does not continue during the disability shall be included for purposes of determining an employee's average weekly wage to the extent that the inclusion of the fringe or other benefit will not result in a weekly benefit amount which is greater than ⅔ of the state average weekly wage at the time of injury. The average weekly wage shall be determined by computing the total wages paid in the highest paid 39 weeks of the 52 weeks immediately preceding the date of injury, and dividing by 39. [MCL 418.371(2); MSA 17.237(371)(2) (emphasis added).]

determination or redetermination of the extent of the worker's disability in dual employment. In enacting that the "average weekly wage" means weekly wages earned by the worker at the time of his injury "in *all* employment," the Legislature did not distinguish between dual employment in which the worker was injured or disabled and dual employment in which he was not injured or disabled.

The WCAB was therefore correct in concluding that Lawrence's wages from both Prompt and Plainfield should be included in her "average weekly wage."

B

The second phase of the calculation of benefits for a partially disabled worker requires a determination of the wages that Lawrence was "able to earn" after the injury. This Court has said:

> [W]age earning capacity . . . is a complex of fact issues which are concerned with the nature of the work performed and the continuing availability of work of that kind, and the nature and extent of the disability and the wages earned. [*Pulley v Detroit Engineering & Machine Co*, 378 Mich 418, 423; 145 NW2d 40 (1966); *Sobotka v Chrysler Corp (After Remand)*, 447 Mich 1, 22; 523 NW2d 454 (1994).]

The fund and the author of the dissenting opinion would make wages actually earned following the injury the sole determinant of earning capacity. This Court has rejected this approach:

> [I]f the bare elements of proof of what the employee was paid were construed as establishing his "earning capacity" the whole purpose of the act would be vitiated. [*Pulley* at 423.]

Wages alone can overvalue an employee's worth in the labor market if they are temporary and inflated, or undervalue it if he is employed at work below his skill level. The full severity of an injury may not reveal itself immediately after it occurs, or an employee may struggle along with the injury before determining it is impossible to go on.

Potential ability to work, if uncoupled with an actual opportunity to exploit that potential, leaves the employee unable to earn wages. In this case, the range of activities Lawrence is physically able to perform has been severely limited. Only a small fraction of available jobs will be as suitable for her as was her sedentary work at Plainfield. Thus, although Lawrence, immediately after the injury, actually continued to earn wages at her part-time summer job at Plainfield, it does not follow that she was "able to earn" replacement wages, as that term is used in the act.

While Lawrence continued to be employed during the summer of 1985 in her part-time sedentary job, her injury incapacitated her from other employment requiring walking, standing, and bending. Lawrence's job with Plainfield was a part-time summer job which, in all events, came to an end two years later when this drive-in, like most drive-ins, closed permanently. The record indicates that Lawrence was diligent in seeking other employment, with the result that Prompt was entitled to substantial credits for wages earned by her in such other employment.

The purpose of the 1980 amendment was to assure that a disabled worker who, like Lawrence, had been engaged in dual employment before the injury, would be entitled, as set forth in § 361, to benefits equal to eighty percent of the difference between her after-tax

average weekly wage from dual employment before the personal injury and the after-tax average weekly wage that she is "able to earn" after the personal injury.[13]

The WCAB order returned this case to the magistrate to determine the wages Lawrence "has *actually* been able to earn" since the injury. Although Prompt would be entitled, pursuant to § 361, to a reduction of its liability for any wages Lawrence actually earned, the WCAB order does not require the magistrate to determine whether Lawrence retains any residual earning capacity, which also would reduce the amount of the award, but not Prompt's liability.

In sum, the wages Lawrence is "able to earn" is a question of fact, to be resolved by the magistrate after considering the full range of factors set forth above. The amount of wages Lawrence is able to earn is neither constrained nor controlled by the wages she actually earned following the injury.

IV

The final issue is the apportionment of liability for benefits. Apportionment in a dual employment situation is controlled by subsection 372(1)(b), which provides:

> If the employment which caused the personal injury or death provided 80% or less of the employee's average weekly wage at the time of the personal injury or death, the insurer or self-insurer is liable for that portion of the employee's weekly benefits as bears the same ratio to his or her total weekly benefits as the average weekly wage from the employment which caused the personal injury or death bears to his or her total weekly wages. The second injury

---

[13] See n 8 for text.

fund is separately but dependently liable for the remainder of the weekly benefits.

The parties agree that Prompt is required to pay the entire amount of the award if the portion of her average weekly wage resulting from her employment with Prompt is more than eighty percent of the average weekly wage computed by including Lawrence's wages from both employments.

The WCAB appears to have construed § 372 to mean that the Second Injury Fund should bear some portion of the liability for benefits payable to Lawrence, even if the magistrate determines that she has not lost any earning capacity in respect to the wages received from Plainfield:

> Calculation of the Fund's obligation to reimburse Prompt Answering requires the calculation of the employer's percentage and the Fund is "separately but dependently liable for the remainder." The numerator of the ratio is "the average weekly wage from the employment which caused the personal injury" . . . . The denominator is plaintiff's "total weekly wages" which is to be determined according to [§ 371], as we have set forth above. This ratio is the employer's percentage and the remainder (or, mathematically, 1 minus the employer's percentage) is the Fund's percentage. [WCAB op, p 19.]

This construction of the act exposes the fund to liability for benefits being paid solely to compensate Lawrence for the incapacity to earn the wages paid by Prompt.

The legislative history of subsection 372(1)(b) is clear that the Second Injury Fund is liable only if the employee experiences wage loss from employment other than that in which the injury occurs, and that

employment contributed more than one-fifth of the employee's average weekly wage.[14]

Section 371 was enacted to include "all employments" in an effort to remedy the perceived injustice of this Court's decision in *Buehler*. At the same time, the Legislature amended § 372 to apportion liability between the injury-employer and the Second Injury Fund. Such apportionment places responsibility on the injury-employer for the wages that were lost while the worker was in its employ, yet protects that employer from loss for hiring a worker with concurrent employment.

The approach stated by the WCAB threatens to distort the balance struck by the Legislature. Because the WCAB formula would apportion liability between Prompt and the fund in proportion to the wages paid by Prompt and Plainfield before the injury, without regard to whether Lawrence lost earning capacity in respect to wages received from Plainfield, the WCAB potentially released Prompt from the full burden of compensation that the Legislature intended that it,

---

[14] The Senate Analysis of the bill enacting the apportionment provision states:

> [T]he employer in whose employment the injury occurred will be liable . . . for all or part of the amount of the regular weekly disability . . . benefits payable to the employee . . ., with the Second Injury Fund assuming liability for the remaining amount of the weekly benefits payable to the employee . . . . If the employment which caused the injury . . . provided more than four-fifths of the employee's average weekly wages from all employments at the time of the injury, that employer . . . will be liable for the full amount of the regular weekly benefits. If the employment which caused the injury . . . provided four-fifths or less of the employee's total average weekly wages at the time of the injury, *then that employer will be liable for a percentage of the weekly benefits equal to the percentage of the employee's average weekly wages provided by that employment.* [Senate Analysis Section, SB 1044 (Second Analysis), January 7, 1981, pp 3-4 (emphasis added).]

and it alone, should bear. Accordingly, if the magistrate determines that Lawrence did not lose her capacity to earn the wages she earned at Plainfield, Prompt and Prompt alone must bear the full responsibility for paying benefits and compensating Lawrence.

We construe § 372 to require the employer under whom the injury occurred to pay the portion of the benefits equal to the ratio that the wages paid by the injury-employer for which benefits are payable bears to the total wages for which benefits are payable. Thus, the fund is only subject to liability for benefits in respect to the wage-earning capacity lost at the concurrent employment.

The Second Injury Fund's responsibility will arise only if Prompt's contribution to the average weekly wage, computed by including the wages from both employments, is determined to have been less than eighty percent. In that case, Prompt will be solely responsible for shouldering the burden of the benefits attributable to its share of the wages for which Lawrence is receiving benefits, but is entitled to reimbursement from the fund for any additional benefits, because, in the language of the statute, "the Second Injury Fund is separately but dependently liable for the remainder of the weekly benefits."[15]

Affirmed in part, reversed in part, and remanded to the magistrate.

BRICKLEY, C.J., and CAVANAGH, J., concurred with LEVIN, J.

BOYLE, J. (*concurring in part*). I agree with parts I, II, III(A), and IV of the lead opinion. Given that the par-

---

[15] Subsection 372(1)(b). See n 9 for text.

ties have not presented arguments involving the relationship between "disability," "earning capacity," and wages the employee is "able to earn," I express no opinion regarding the remainder of part III of the lead opinion. The parties do not dispute application of § 361,[1] and I therefore agree that a remand to the magistrate for application of § 361 is proper.

MALLETT, J., concurred with BOYLE, J.

WEAVER, J. (*concurring in part and dissenting in part*). I concur with the majority holding that the Second Injury Fund is only liable under § 372, the apportionment provision of the Worker's Disability Compensation Act, "if the employee experiences wage loss from employment other than that in which the injury occurs, and that employment contributed more than one-fifth of the employee's average weekly wage." *Ante* at 126-127. Section 372 is simply not triggered if there is nothing to apportion.

However, I dissent because I believe that it is not necessary to remand this case. The magistrate found that the plaintiff's injury rendered her compensably disabled from one employment but not compensably disabled from her concurrent employment. The magistrate correctly concluded that plaintiff was partially disabled because she retained a wage-earning capacity in work suitable to her qualifications and training. Further, the WCAB agreed with these findings and conclusion.[1] I believe that the majority's decision to remand is functionally equivalent to a reversal of the finding of partial disability because it ignores both the

---

[1] MCL 418.361; MSA 17.237(361).

[1] The WCAB substantially modified the magistrate's opinion, but did not clearly order a remand.

magistrate's and the WCAB's findings that the plaintiff retained a wage-earning capacity.

The magistrate already explored the "complex of fact issues" that informs the analysis of "wage earning capacity." The majority's attempt to cleave the concept of "wage earning capacity" from the concept of "disability," *ante* at 120-121, undermines the legislature's unmistakable intent to define compensability by a marriage of those very concepts: " 'disability' means a limitation of an employee's wage earning capacity in work suitable to his or her qualifications and training resulting from a personal injury or work related disease." MCL 418.301(4);    MSA 17.237(301)(4).    See *Michales v Morton Salt Co*, 450 Mich 479, 490; 538 NW2d 1 (1995).    While it is true and very regrettable that this plaintiff's activities are "severely limited," *ante* at 124, this fact does not force reconsideration of the magistrate's conclusion that this plaintiff retained a wage-earning capacity at sedentary employment.

Furthermore, including wages from "all employment" in the definition of average weekly wage under § 371(1) did not change the basic definition of compensable disability. The addition of "all employment" in 1982 was intended to address the inequity of prior case law, as discussed by the majority opinion. *Ante* at 123. Prior case law did not consider wages earned at a second job even when the injury affected the employee's wage-earning capacity at the second job.[2]

---

[2] See, e.g., *Buehler v Univ of Michigan*, 277 Mich 648; 270 NW 171 (1936).

The addition of the "all employment" resolved that *very specific* problem.[3]

In this case, the magistrate found that the plaintiff is not compensably disabled from sedentary employment. In other words, she retains a wage-earning capacity in work suitable to her qualifications and training: she is still fully able to earn wages at a similar sedentary job. It is also clear that the subsequent loss of the sedentary job was unrelated to plaintiff's compensable disability. It is fundamentally inconsistent with Michigan's wage-loss system to compensate an employee when the subsequent loss of a second job is in no way related to her compensable disability and when she retains a wage-earning capacity for other work comparable to the second job.

Whether the eventual closing of the drive-in was inevitable is not relevant to the determination of the employee's earning capacity and, further, it is not the purpose of the Michigan Worker's Disability Compensation Act to serve as another form of unemployment insurance.

I would reverse the judgment of the Court of Appeals and reinstate the decision of the magistrate as modified by the WCAB and to the extent that it is consistent with this opinion.

RILEY, J., concurred with WEAVER, J.

---

[3] The legislative analysis makes clear that the "average weekly wage will be calculated as the weekly wage earned by the employee in *all* employments at the time of the injury and will include overtime pay, premium pay, and cost-of-living adjustments but will not include fringe or other benefits which continue to be received by the employee during a disability." Senate Analysis Section, SB 1044 (Second Analysis), January 7, 1981. The list of exclusions does not address the status of earnings from concurrent employment not affected by the disability.