Young, C.J.
Plaintiff was injured in the course of his employment as a part-time firefighter for defendant Thornapple Township. At the time of his injury, plaintiff was also employed by another employer. Thornapple Township paid plaintiff the maximum weekly wage loss benefits under the Worker’s Disability Compensation Act (WDCA),[1] and plaintiff additionally received ben *126 efits pursuant to a disability insurance policy provided by the township. Thornapple Township did not reduce its workers’ compensation liability by coordinating plaintiff’s workers’ compensation benefits with his disability benefits under MCL 418.354(l)(b). Subsequently, Thornapple Township sought reimbursement from the Second Injury Fund[2] under the dual employment provisions, MCL 418.372, based on the uncoordinated amount of wage loss benefits.
The issue to be determined in this case is the amount that the fund is required to reimburse an employer for its portion of an injured employee’s weekly benefits when the employer fails to coordinate benefits. We hold that the coordination of benefits is mandatory, except in very narrow employment circumstances that are inapplicable in this case. Coordination of benefits serves to reduce the amount of weekly benefits an employer is legally obligated to pay an employee under the WDCA. Any additional sum of weekly benefits volitionally provided by the employer does not alter the employer’s statutory obligation to the injured employee.
If an injured worker was engaged in more than one employment at the time of injury, the WDCA apportions liability between the employment that caused the injury and the Second Injury Fund. When the employment that caused the injury provided less than 80 percent of the employee’s wages, the fund is required to reimburse its “portion of the benefits due the employee. . . . ”[3] Because the fund’s liability is “dependent” upon the employer’s liability, and coordination of the employer’s benefits is compulsory, the fund is required to reimburse its portion of the benefits due on the basis of the coordinated amount of benefits. We reverse the judg *127 ment of the Court of Appeals and remand this case to the magistrate for further proceedings consistent with this opinion.
I. FACTS AND PROCEDURAL HISTORY
The parties submitted this case under stipulated facts. Plaintiff, Robert Smitter, was employed both as a part-time firefighter for Thornapple Township and as an employee of General Motors Corporation. Smitter earned approximately 11 percent of his total wages with Thornapple Township and 89 percent of his wages with General Motors. On May 3, 2005, Smitter sustained a work-related injury while fighting a fire. He was disabled from both employments for approximately 26 weeks. Given his average weekly wage, Smitter was entitled to workers’ compensation wage loss benefits at the maximum rate of $689 a week. Smitter also received $800 a week in “Sickness & Accident” benefits pursuant to a disability insurance policy fully funded by Thornapple Township. The township did not coordinate the benefits paid from the disability insurance policy against its workers’ compensation obligation. Rather, the township voluntarily paid the state maximum rate of wage loss benefits to plaintiff, in addition to the benefits plaintiff received pursuant to the insurance policy.
Initially, Thornapple Township sought reimbursement from the Second Injury Fund in the amount of $17,897.87 for the entirety of plaintiffs wage loss benefits. The fund agreed to pay $2,077.99 — the amount of its liability if the township had coordinated plaintiffs benefits. On February 2, 2007, Thornapple Township filed an application for a hearing, seeking reimbursement from the Second Injury Fund for “wage loss benefits attributable to earnings from General *128 Motors Corporation” for plaintiffs period of disability. Relying on Rahman v Detroit Board of Education,[4] the magistrate ordered that the fund reimburse Thor-napple Township in the amount of $15,966.75, representing 89 percent of the uncoordinated wage loss benefits paid to Smitter.
The Workers’ Compensation Appellate Commission (WCAC)[5] affirmed the decision of the magistrate. The majority commiserated with the fund’s being required to “support the Township’s public policy of treating its firefighters to benefits beyond the statutory requirements,” agreeing with the fund that it was “unfair to allow an employer to forfeit coordination and force another party to fund that choice.”[6] However, because Rahman controlled the facts of the case, the fund could “not take advantage of the injury employer’s[7] entitlement to coordination unless the employer coordinates benefits.”[8]
The Court of Appeals initially denied the fund’s application for leave to appeal,[9] but this Court remanded the case to the Court of Appeals for consideration as on leave granted.[10] On remand, the Court of Appeals affirmed the decision of the WCAC.[11] The panel noted that it was bound to follow Rahman pursuant to *129 MCR 7.215(J)(1), that the holding in Rahman was consistent with the statutory language, and that there was no principled reason for distinguishing Rahman from the present case. This Court granted the Second Injury Fund’s application for leave to appeal.[12]
II. STANDARD of review
While this Court’s review of a decision by the WCAC is limited, we review de novo questions of law in a workers’ compensation case.[13] Likewise, questions of statutory interpretation are questions of law reviewed de novo.[14]
In interpreting a statute, our obligation is to discern the legislative intent that may reasonably be inferred from the words actually used in the statute.[15] “A fundamental principle of statutory construction is that ‘a clear and unambiguous statute leaves no room for judicial construction or interpretation.’ ”[16] When the statutory language is unambiguous, the proper role of the judiciary is simply to apply the terms of the statute to the facts of the particular case.[17] In addition, words used by the Legislature must be construed and understood in accordance with their common, ordinary meaning.[18]
*130 III. ANALYSIS
A. RELEVANT STATUTORY PROVISIONS
In order to analyze properly the issues presented in this case, we must examine the interplay between several provisions of the WDCA.
There is no question that plaintiff received an injury arising out of and in the course of his employment with Thornapple Township.[19] Because plaintiff was completely disabled for approximately 26 weeks, MCL 418.351(1) describes the township’s liability for weekly wage loss benefits. It provides in relevant part:
While the incapacity for work resulting from a personal injury is total, the employer shall pay, or cause to be paid as provided in this section, to the injured employee, a weekly compensation of 80% of the employee’s after-tax average weekly wage, but not more than the maximum weekly rate of compensation, as determined under [MCL 418.355]. Compensation shall be paid for the duration of the disability.
MCL 418.354 provides for the coordination of benefits, reducing an employer’s obligation to pay weekly wage benefits under the WBCA when an employee simultaneously receives payments in accordance with specified benefit programs. At the time of plaintiffs injury,[20] MCL 418.354 provided in relevant part as follows:
(1) This section is applicable when either weekly or lump sum payments are made to an employee as a result of liability pursuant to [MCL 418.351, MCL 418.361, or MCL 418.835] with respect to the same time period for which old-age insurance benefit payments under the social security act, 42 U.S.C. 301 to 1397f; payments under a self-insurance plan, a *131 wage continuation plan, or a disability insurance policy provided by the employer-, or pension or retirement payments pursuant to a plan or program established or maintained by the employer, are also received or being received by the employee. Except as otherwise provided in this section, the employer’s obligation to pay or cause to be paid weekly benefits other than specific loss benefits under [MCL 418.361(2)] and (3) shall be reduced by these amounts:
(b) The after-tax amount of the payments received or being received under a self-insurance plan, a wage continuation plan, or under a disability insurance policy provided by the same employer from whom benefits under [MCL 418.351, MCL 418.361, or MCL 418.835] are received if the employee did not contribute directly to the plan or to the payment of premiums regarding the disability insurance policy....
(2) To satisfy any remaining obligations under [MCL 418.351, MCL 418.361, or MCL 418.835], the employer shall pay or cause to be paid to the employee the balance due in either weekly or lump sum payments after the application of subsection (1).
(15) With respect to volunteer fire fighters, volunteer safety patrol officers, volunteer civil defense workers, and volunteer ambulance drivers and attendants who are considered employees for purposes of this act pursuant to [MCL 418.161(1)(a)], the reduction of weekly benefits provided for disability insurance payments under subsection (1)(b) and (c) and subsection (11) may be waived by the employer. An employer that is not a self-insurer may make the waiver provided for under this subsection only at the time a worker’s compensation insurance policy is entered into or renewed.[21]
*132 MCL 418.372, known as the dual employment provision, apportions liability for an injured employee’s workers’ compensation benefits when the employee was engaged in more than one employment at the time of injury. At the time of plaintiffs injury, the statute provided in relevant part as follows:
(1) If an employee was engaged in more than 1 employment at the time of a personal injury or a personal injury resulting in death, the employer in whose employment the injury or injury resulting in death occurred is liable for all the injured employee’s medical, rehabilitation, and burial benefits. Weekly benefits shall be apportioned as follows:
(a) If the employment which caused the personal injury or death provided more than 80% of the injured employee’s average weekly wages at the time of the personal injury or death, the insurer or self-insurer is liable for all of the weekly benefits.
(b) If the employment which caused the personal injury or death provided 80% or less of the employee’s average weekly wage at the time of the personal injury or death, the insurer or self-insurer is liable for that portion of the employee’s weekly benefits as bears the same ratio to his or her total weekly benefits as the average weekly wage from the employment which caused the personal injury or death bears to his or her total weekly wages. The second injury fund is separately but dependently liable for the remainder of the weekly benefits. The insurer or self-insurer has the obligation to pay the employee or the employee’s dependents at the full rate of compensation. The second injury fund shall reimburse the insurer or self-insurer quarterly for the second injury fund’s portion of the benefits due the employee or the employee’s dependents.
(3) This section does not apply to volunteer public employees entitled to benefits under [MCL *133 418.161(1)(a)].[22]
Reading these statutory provisions together, it is clear that, as a starting point, Thornapple Township is obligated by MCL 418.351 to pay Smitter weekly wage loss benefits in the amount of 80 percent of his after-tax average weekly wage, subject to the maximum weekly cap imposed by MCL 418.355, for the duration of his disability.
Because Smitter received benefits pursuant to a disability insurance policy provided by Thornapple Township “with respect to the same time period”[23] as the township’s obligation to pay weekly wage loss benefits pursuant to MCL 418.351, the coordination of benefits provisions are implicated. As Thornapple Township fully funded the disability policy, its “obligation to pay” weekly wage loss benefits “shall he reduced” by the after-tax amount of benefits Smitter received under the policy.[24] The township’s “remaining obligations” regarding Smitter’s wage loss benefits under MCL 418.351 are thus reduced to “the balance due” after coordination.[25]
*134 Lastly, because Smitter was engaged in more than one employment at the time of his injury, the dual employment provisions of MCL 418.372 are applicable. While Thornapple Township remains liable for all of Smitter’s medical and rehabilitation benefits, Smitter’s weekly wage loss benefits are apportioned between the township and the Second Injury Fund because “the employment which caused the personal injury” provided less than 80 percent of Smitter’s wages at the time of his injury.[26] The township is liable for the same percentage of Smitter’s weekly benefits as his average weekly wage from the township bore to his total wages. In other words, because Smitter earned 11 percent of his weekly wages with the township, it is liable for 11 percent of Smitter’s weekly benefits. The fund is “separately but dependently liable” for the remaining 89 percent of Smitter’s weekly benefits, representing the percentage of weekly benefits attributable to Smitter’s employment with General Motors.[27] While the township must provide weekly benefits to Smitter “at the full rate of compensation,” the fund is required to reimburse the township for its “portion of the benefits due the employee . . . .”[28]
B. COORDINATION OF BENEFITS
Relying on Rahman v Detroit Board of Education, Thornapple Township argues that the fund is liable for reimbursement of its portion of the uncoordinated amount of benefits and cannot reduce its liability by *135 claiming entitlement to the coordinated amount, particularly given that the township has “exercised its right” not to coordinate benefits.
In Rahman, the plaintiff suffered a back injury during the course of his employment with the Detroit Board of Education. At the time of injury, Rahman was also employed with the city of Detroit, earning 46 percent of his wages from the board of education and the remaining 54 percent of his wages from the city of Detroit. The magistrate ordered an open award of benefits and further held that the fund had reimbursement liability under the dual employment provisions because the board provided less than 80 percent of Rahman’s average weekly wage.
Rahman also received a pension from the board of education, although the facts do not indicate whether the Board coordinated Rahman’s weekly wage loss benefits. The fund argued that the amount it was required to reimburse the board should be based on the coordinated amount of benefits. The Court of Appeals rejected the fund’s claim, providing the following analysis:
[T]he coordination of benefits provision ... applies if an employee receives worker’s compensation benefits at the same time he receives pension or retirement payments pursuant to a plan or program maintained or established by an employer. [MCL 418.354(1)] provides that “the employer’s obligation to pay or cause to be paid weekly benefits other than specific loss benefits ... shall be reduced by [specified] amounts ....” A plain reading of the subsection indicates that the employer’s obligation to pay the employee benefits may be reduced by the amount of pension the employer pays to the employee.
We reject the [Second Injury Fund’s] argument that the total amount of worker’s compensation benefits payable to plaintiff should be reduced by the amount of the pension *136 benefits plaintiff receives from the board. Again, we consider the clear and unambiguous language of the statute. [MCL 418.354] provides for a reduction in an employer’s obligation to pay benefits if that employer provides the employee a pension. This reduction is clearly premised on the fact that the employer is providing another wage benefit to the employee; the statute allows the employer to coordinate that benefit with its obligation to pay worker’s compensation wage-loss benefits to the employee. It is apparent from the language of the statute that the Legislature intended that the employer whose employment caused an injury alone may take advantage of the coordination provisions. There is no suggestion that the [Second Injury Fund], in a dual employment situation, may take advantage of the injury-employer’s entitlement to coordination. Therefore, the [Second Injury Fund’s] argument is rejected.[29]
While Rahman claimed to follow the unambiguous language of the statute, it failed to do so. Contrary to Rahman’s holding that an employer’s obligation to pay weekly benefits “may be reduced,” MCL 418.354(1) provides that the employer’s obligation “shall be reduced” by the requisite amounts listed in the statute. The Legislature’s use of the word “shall” generally indicates a mandatory directive, not a discretionary act.[30]
Furthermore, Rahman failed to recognize or address the significance of MCL 418.354(15).[31] This provision *137 explicitly delineates the narrow group of employers that the Legislature has permitted to waive the “reduction of weekly benefits” that is otherwise compelled by the coordination provisions: those employing “volunteer fire fighters, volunteer safety patrol officers, volunteer civil defense workers, and volunteer ambulance drivers and attendants who are considered employees for purposes of this act pursuant to [MCL 418.161(1)(a)] . . . .”[32] Moreover, the scope of allowable waiver encompasses only “disability insurance payments under subsection (1)(b) and (c) and subsection (11). . . .”[33] By specifically outlining the parameters under which an employer may permissibly waive coordination of benefits, the Legislature by implication prohibited all other employers who do not meet the specifications from waiving coordination of benefits.[34] Such a conclusion is incompatible with Rah-man’s holding that the coordination of benefits is a discretionary “entitlement” that may be claimed or relinquished at the pleasure of any employer.[35] While Rahman decried the notion that “the total amount of worker’s compensation benefits payable to plaintiff should be reduced by the amount of the pension benefits plaintiff receives,” that is precisely what MCL 418.354(1) requires. Because the holding in Rahman contravenes the plain language of the statute, it is overruled.
*138 Thus, with the exception of those employments falling within the limits described in MCL 418.354(15), an employer’s obligation to pay weekly benefits under the WDCA “shall be reduced” by the corresponding amounts listed in MCL 418.354(1). The coordination of benefits is mandatory, not discretionary, and reduces an employer’s obligation to pay weekly wage loss benefits as a matter of law. As a practical consideration, an injured worker is unlikely to protest if an employer consciously chooses to pay the employee in excess of what the law requires. However, any additional sum of weekly wage loss benefits volitionally provided by the employer “[flor its own policy reasons” has no effect on the employer’s obligation to pay weekly benefits under the law.[36]
C. THE SECOND INJURY FUND’S LIABILITY
MCL 418.372(1)(b) apportions liability between the fund and the injury employer when the employee was engaged in more than one employment at the time of his injury and the injury employer provided 80 percent or less of the employee’s average weekly wage.[37] The statute *139 does not require reimbursement of any additional amount that the employer voluntarily elects to provide to an injured employee — it only provides that the fund is liable for its “portion of the benefits due the employee . .. Consistent with the common understanding of the word “due,” the benefits due the employee are those that are owed to the employee.[38]
In determining the amount “due” the employee, we note that under the explicit language of the statute, the fund has dependent or contingent liability[39] for the remainder of the weekly benefits for which the injury employer would ordinarily be liable[40] but for the apportionment of liability provided in MCL 418.372.[41] Thus, the fund’s reimbursement liability is expressly conditioned on the injury employer’s statutory liability. As discussed above, the application of MCL 418.354 to reduce an employer’s liability under the WDCA is compulsory and may not be avoided except in very narrow circumstances.[42] Therefore, the amount “due the employee”[43] is the fund’s portion of the employer’s *140 “remaining obligationD” under the act, which is described as “the balance due in either weekly or lump sum payments after the application of’ the coordination provisions.[44] Thus, the fund is obligated to reimburse the employer for its “portion of the benefits due the employee”[45] after the application of MCL 418.354.[46] The fund is not required to reimburse the employer for any additional amounts of benefits that do not reflect the employer’s Lability under the act.
Thornapple Township argues that “strong public policy” considerations support its position and that providing an injured firefighter with full workers’ compensation benefits as well as disability benefits provides an “incentive” for its employees to engage in firefighting services. However, the public policy of Michigan is not to be determined by what a majority of this Court deems desirable or appropriate at a given time. Rather, the public policy of Michigan must be “clearly rooted in the law” as “reflected in our state and federal constitutions, our statutes, and the common law.”[47] Moreover, this Court may not substitute its policy preferences for those policy decisions that have been clearly provided by statute.[48] In this instant case, it is clear from the *141 mandate contained in MCL 418.354(1) that the public policy of Michigan, as articulated by the Legislature, is to prevent duplicative wage loss payments while maintaining “suitable wage-loss benefits.”[49] Additionally, the Legislature has unequivocally indicated that the public policy of Michigan prohibits the employees of fire departments and police departments from receiving “like benefits” from both a municipality and the WDCA.[50] MCL 418.161(c) provides:
Police officers, fire fighters, or employees of the police or fire departments, or their dependents, in municipalities or villages of this state providing like benefits, may waive the provisions of this act and accept like benefits that are provided by the municipality or village but are not entitled to like benefits from both the municipality or village and this act. However, this waiver does not prohibit those employees or their dependents from being reimbursed under [MCL 418.315] for the medical expenses or portion of medical expenses that are not otherwise provided for by the municipality or village. This act shall not be construed as limiting, changing, or repealing any of the provisions of a charter of a municipality or village of this state relating to benefits, compensation, pensions, or retirement independent of this act, provided for employees.
Because the policy arguments advanced by Thornapple Township stand in stark contradiction to the public policy pronouncements of the Legislature, they must fail.
IV CONCLUSION
We conclude that the Second Injury Fund is required to reimburse an employer for the fund’s portion of the *142 benefits due the employee on the basis of the coordinated amount of weekly benefits. We reverse the judgment of the Court of Appeals and remand this case to the magistrate for further proceedings consistent with this opinion.
Markman, Kelly, and ZAHRA, JJ., concurred with Young, C.J.

 MCL 418.101 et seq.

 See MCL 418.501(1).

 MCL 418.372(1)(b).

 Rahman v Detroit Bd of Ed, 245 Mich App 103; 627 NW2d 41 (2001).

 Now the Michigan Compensation Appellate Commission. Executive Order No. 2011-6; MCL 445.2032.

 Smitter v Thornapple Twp, 2009 Mich ACO 175, p 3.

 The “injury employer” is the employer the injured party was working for at the time of the injury.

 Id.

 Smitter v Thornapple Twp, unpublished order of the Court of Appeals, entered April 5, 2010 (Docket No. 294768).

 Smitter v Thornapple Twp, 488 Mich 917 (2010).

 Smitter v Thornapple Twp, unpublished opinion per curiam of the Court of Appeals, issued November 22, 2011 (Docket No. 294768).

 Smitter v Thornapple Twp, 491 Mich 917 (2012).

 Rakestraw v Gen Dynamics Land Sys, Inc, 469 Mich 220, 224; 666 NW2d 199 (2003); MCL 418.861; MCL 418.861a(14).

 Dep’t of Transp v Tomkins, 481 Mich 184, 190; 749 NW2d 716 (2008).

 White v Ann Arbor, 406 Mich 554, 562; 281 NW2d 283 (1979).

 In re Certified Question (Kenneth Henes Special Projects Procurement v Continental Biomass Indus), 468 Mich 109, 113; 659 NW2d 597 (2003), quoting Coleman v Gurwin, 443 Mich 59, 65; 503 NW2d 435 (1993).

 Rakestraw, 469 Mich at 224.

 MCL 8.3a; Massey v Mandell, 462 Mich 375, 380; 614 NW2d 70 (2000).

 See MCL 418.301.

 Although the statute was subsequently amended by 2011 PA 266, the provisions relevant to this case have remained substantively unaltered.

 MCL 418.354. as amended by 1987 PA 21 (emphasis added).

 MCL 418.372, as added by 1980 PA 357 (emphasis added). MCL 418.372 was amended by 2012 PA 83, which amended subsection (3) to read “This section does not apply to individuals entitled to benefits under [MCL 418.161(1)(d), (e), (f), (g), (h), (i), (j), and (o)].”

 MCL 418.354.

 MCL 418.354(1)(b) (emphasis added).

 MCL 418.354(2). At oral argument, the parties agreed that plaintiff is not a volunteer firefighter, one of the very few employments to which “the reduction of weekly benefits provided for disability insurance payments ... may be waived by the employer.” MCL 418.354(15). Indeed, the parties submitted this case under stipulated facts, including the stipulation that Smitter was employed as a “paid part-time firefighter .. ..” This Court has distinguished between stipulations of fact, which are binding on the judiciary, Dana Corp v Employment Security Comm, 371 Mich 107, 110; 123 NW2d 277 (1963), and stipulations of law, which are not binding, In re Finlay Estate, 430 Mich 590, 595; 424 NW2d *134 272 (1988). Thus, Justice Cavanagh’s reliance on Union Guardian Trust Co v Zack, 274 Mich 108, 113; 264 NW 309 (1936), which involved an admission of law, is inapposite.

 MCL 418.372(1)(b).

 Id.

 Id.

 Rahman, 245 Mich App at 120-121 (third alteration in original) (emphasis altered) (citation omitted).

 Costa v Community Emergency Med Servs, 475 Mich 403, 409; 716 NW2d 236 (2006); Burton v Reed City Hosp Corp, 471 Mich 745, 752-754; 691 NW2d 424 (2005); Tobin v Civil Serv Comm, 416 Mich 661, 667; 331 NW2d 184 (1982); Smith v Amber Twp Sch Dist, 241 Mich 366, 368-369; 217 NW 15 (1928).

 Through 1983 PA 159 the Legislature enacted MCL 418.354(15) and redesignated former subsections (15) to (17). MCL 418.354(15) has remained unaltered since that time.

 MCL 418.354(15).

 Id.

 Under the doctrine of expressio unius est exclusio alterius (the expression of one thing is the exclusion of another), the specification in a statute of one particular class excludes all other classes. Pittsfield Charter Twp v Washtenaw Co, 468 Mich 702, 712; 664 NW2d 193 (2003); Dave's Place, Inc v Liquor Control Comm, 277 Mich 551; 269 NW 594 (1936); Detroit v Redford Twp, 253 Mich 453, 455-456; 235 NW 217 (1931).

 Rahman, 245 Mich App at 121.

 Despite the unambiguous meaning of the word “shall,” Justice McCormack opines that an injury employer may avoid coordinating its compensation obligation under the WDCA because to hold otherwise would prohibit “employers and employees from freely entering into employment contracts under terms as they see fit.” Nothing in this opinion affects the right of an employer to agree to provide any contractual benefit to its employees that it wishes to offer. We have announced no limiting legal principle that would prohibit an injury employer, either by gratuitous impulse or a negotiated contract provision, from providing benefits in excess of its obligation under the WDCA. However, we do conclude, applying the language of the WDCA, that the injury employer in a dual employment situation must bear the cost of its munificence and cannot require the fund to subsidize its choices.

 When the injury employer provided more than 80 percent of the employee’s average weekly wage, there is no apportionment of liability. The injury employer is “liable for all of the weekly benefits.” MCL 418.372(1)(a).

 Random House Webster’s College Dictionary (1996), p 413 (defining “due” as “owing or owed[.]”).

 Random House Webster’s College Dictionary (1996), p 363 (defining “dependent” as “conditioned or determined by something else; contingente.]”).

 See MCL 418.351; MCL 418.361.

 MCL 418.372(1)(b) imposes liability on the fund for that portion of weekly benefits attributable to the injured employee’s concurrent employment. See Lawrence v Toys R Us, 453 Mich 112, 128; 551 NW2d 155 (1996) (“[T]he fund is only subject to liability for benefits in respect to the wage-earning capacity lost at the concurrent employment.”).

 We note that the very same employments permitted to waive the coordination of benefits under MCL 418.354(15) are specifically excluded from the apportionment of liability under the dual employment provisions pursuant to MCL 418.372(3). Thus, when the coordination of benefits is properly waived, the fund has absolutely no reimbursement liability in a dual employment situation.

 MCL 418.372(1)(b).

 MCL 418.354(2) (emphasis added).

 MCL 418.372(1)(b).

 This conclusion is further supported by the fact that MCL 418.354(1) refers to “the employer’s obligation.” The only time “obligation” appears in MCL 418.372(1)(b) is in the third sentence, which addresses the “obligation” to “pay the employee... at the full rate of compensation.” When MCL 418.372(1)(b) mentions the employer alone and the fund alone, the provision refers to their “liab[ilities].” Therefore, it is reasonable to conclude that the reference in MCL 418.354(1) to “the employer’s obligation” refers to “the full rate of compensation,” not just the amount for which the employer alone is “liable.” If the full rate must be coordinated, then the fund’s liability to reimburse an employer necessarily occurs after coordination.

 Terrien v Zwit, 467 Mich 56, 66-67; 648 NW2d 602 (2002).

 See generally Devillers v Auto Club Ins Ass’n, 473 Mich 562, 588-593; 702 NW2d 539 (2005).

 See Drouillard v Stroh Brewery Co, 449 Mich 293, 299-300; 536 NW2d 530 (1995).

 See Crowe v Detroit, 465 Mich 1, 8-10; 631 NW2d 293 (2001) (providing that “like benefits” are those that are similar in their salient features).