ARNOLD v GENERAL MOTORS CORPORATION (ON REMAND

Docket No. 185213. Submitted July 16, 1996, at Detroit. Decided December 17, 1996, at 9:00 A.M. Leave to appeal sought.

On December 11, 1989, Bernetta C. Arnold filed a claim for worker's disability compensation benefits from her former employers and the Second Injury Fund. Arnold had worked for General Motors Corporation from 1975 until April 16, 1987, when she was laid off. On October 24, 1986, she had injured her back in the course of her employment and had been assigned to favored-work for the duration of her employment with General Motors. On May 8, 1988, she began working for Suburban Mobility Authority for Regional Transportation (SMART) as a bus driver. The rigors of bus driving aggravated Arnold's back condition, causing her to become disabled as of her last day of work with SMART, March 1, 1989. A magistrate awarded Arnold benefits, payable by General Motors for the period from December 11, 1987, to May 8, 1988, payable by SMART from March 2, 1989, to March 2, 1990, and payable by the Second Injury Fund thereafter. On appeal, the Worker's Compensation Appellate Commission modified the award to extend the period for which General Motors was liable for payment of benefits to March 1, 1989, the date of the new injury, with SMART and the Second Injury Fund being liable for payment of benefits thereafter. Arnold sought leave to appeal to the Court of Appeals, which was denied. Bernetta Arnold died, and Alice A. Arnold, executor of the estate of Bernetta Arnold, was substituted as plaintiff and sought leave to appeal to the Supreme Court, which remanded the matter to the Court of Appeals for consideration as on leave granted. 448 Mich 913 (1995).

On remand, the Court of Appeals *held*:

The commission did not err in refusing to apply § 301(5)(e) of the Worker's Disability Compensation Act, MCL 418.301(5)(e); MSA 17.237(301)(5)(3), under these circumstances, because that section was not intended by the Legislature to be applicable where a disability arises out of an aggravation of a prior injury during the course of employment with a subsequent employer.

Affirmed.

J. F. FOLEY, J., concurring in part and dissenting in part, stated that the Worker's Compensation Appellate Commission properly extended the liability of General Motors to the last day of work at SMART, but it should have ordered SMART and the Second Injury Fund to pay benefits based on Bernetta Arnold's earnings while she was employed by SMART from the date of her last day of work at SMART to the date of her death and ordered General Motors to continue to pay partial compensation benefits from the date of her last day of work at SMART to the date of her death as if she were still earning wages at SMART.

1. WORKER'S COMPENSATION — DISABILITY — AGGRAVATION OF PRIOR INJURY — SUCCESSIVE EMPLOYERS.

   The employer at the time of a subsequent disabling injury or aggravation of a prior injury is wholly liable for payment of worker's compensation benefits where the subsequent injury or aggravation of a prior injury contributes to the disability of an employee who has worked for successive employers (MCL 418.301[1]; MSA 17.237[301][1]).

2. WORKER'S COMPENSATION — DISABILITY — AGGRAVATION OF PRIOR INJURY — SUCCESSIVE EMPLOYERS.

   The Legislature did not intend § 301(5)(e) of the Worker's Disability Compensation Act to be applicable where a disability arises out of an aggravation of a prior injury during the course of employment with a subsequent employer (MCL 418.301[5][e]; MSA 17.237[301][5][e]).

*Kelman, Loria, Downing, Schneider & Simpson* (by *Rosemary E. Jabbour*), for the plaintiff.

*Conklin, Benham, Ducey, Listman & Chuhran, P.C.* (by *Martin L. Critchell*), for the defendant.

ON REMAND

Before: HOOD, P.J., and GRIFFIN and J. F. FOLEY,* JJ.

GRIFFIN, J. The Supreme Court remanded this case to the Court of Appeals for consideration as on leave granted. 448 Mich 913 (1995). Thus, plaintiff appeals

---

* Circuit judge, sitting on the Court of Appeals by assignment.

as on leave granted the order of the Worker's Compensation Appellate Commission modifying the magistrate's award of disability compensation benefits. We affirm.

Plaintiff's decedent worked as an assembler for General Motors Corporation from 1975 until April 16, 1987.[1] She injured her back in the course of her employment on October 24, 1986, and was placed on light work for the duration of her employment. On January 27, 1987, she took sick leave for foot surgery that was not work-related. When she returned to work on April 16, 1987, she was laid off.

From April 15, 1985, to February 4, 1988, plaintiff's decedent did occasional part-time work for Shortway Northstar Lines as a shuttle bus driver. On May 8, 1988, she began working for Suburban Mobility Authority for Regional Transportation (SMART), also as a bus driver. Before being hired, she obtained a vocationally handicapped worker's certificate on the basis of her back injury. The certificate limits the liability of SMART pursuant to MCL 418.901 *et seq.;* MSA 17.237(901) *et seq.*

The rigors of driving a bus aggravated decedent's back condition to the point of disability. Her last day of work with SMART was March 1, 1989. She filed her claim for compensation benefits against her prior employers and the Second Injury Fund on December 11, 1989. Following a hearing, the worker's compensation magistrate awarded plaintiff benefits payable by General Motors from December 11, 1987, to May 8, 1988, when she began working for SMART. The award

---

[1] Bernetta C. Arnold died during the pendency of the appeal, and her executor was substituted as plaintiff.

assessed liability against SMART from March 2, 1989, to March 2, 1990, and thereafter against the Second Injury Fund.

On appeal, the WCAC affirmed the award, but extended the liability of General Motors to March 1, 1989, decedent's last day of work with SMART. The WCAC held that liability after that date fell wholly on SMART and the Second Injury Fund for the new injury date caused by the work-related aggravation of decedent's back condition while employed by SMART.

On appeal, plaintiff argues that the WCAC committed legal error by failing to apply MCL 418.301(5)(e); MSA 17.237(301)(5)(e), which provides:

> If the employee, after having been employed pursuant to this subsection for less than 100 weeks loses his or her job for whatever reason, the employee shall receive compensation based upon his or her wage at the original date of injury.

Plaintiff misconstrues the effect of § 301(5). Section 301 is a partial codification of the former judicially created favored-work doctrine. *Pulver v Dundee Cement Co*, 445 Mich 68, 74; 515 NW2d 728 (1994). The subparts of subsection 301(5) all deal with the level of benefits to be paid, not whether benefits are to be paid in a particular circumstance. *Lee v Koegel Meats*, 199 Mich App 696, 702; 502 NW2d 711 (1993). The statute did not declare a right to compensation different from existing law.

The existing law applied by the WCAC is the Massachusetts-Michigan rule governing subsequent injuries or aggravations of initial injuries. The employer at the time of a subsequent disabling injury or aggravation of a prior injury is wholly liable for payment of com-

pensation benefits when the subsequent injury or aggravation contributes to the disability. *Dressler v Grand Rapids Die Casting Corp*, 402 Mich 243, 253-254; 262 NW2d 629 (1978), superseded in part by 1980 PA 357, MCL 418.301(2); MSA 17.237(301)(2). In enacting § 301(5), the Legislature did not modify § 301(1), which provides that the time of injury in the case of an injury not attributable to a single event shall be the last day of work in the employment in which the employee was last subjected to the conditions that resulted in the disability.

Here, it is uncontested that decedent's work as a bus driver aggravated her prior back injury. Thus, SMART and the Second Injury Fund are wholly liable for the payment of compensation benefits. We hold that the Legislature did not intend § 301(5)(e) to apply when an employee receives an aggravation of a prior injury in later employment. Reading the provisions of the subsections together, *Miles v Russell Memorial Hosp*, 202 Mich App 6, 10; 507 NW2d 784 (1993), the reference in subsection e to losing a job for any reason should be construed in light of the restriction in subsection d, which limits benefits to the situation where an employee becomes unemployed through no fault of the employee. Thus, the broad language of subsection e was intended to cover situations where an employee, regardless of fault, loses favored work. It was not intended to cover situations where an employee is required to leave subsequent employment with another employer because of another compensable injury.

Affirmed.

HOOD, P.J., concurred.

J. F. FOLEY, J. (*concurring in part and dissenting in part*). The decision of the Worker's Compensation Appellate Commission should be affirmed in part and reversed in part. It should be affirmed in its extending the liability of General Motors Corporation to March 1, 1989, decedent's last day of work with SMART. It should be reversed with respect to benefits payable after March 1, 1989, with Suburban Mobility Authority for Regional Transportation (SMART) and the Second Injury Fund being ordered to pay compensation benefits based on the wages Bernetta C. Arnold was earning as of the last day of her employment with SMART and with General Motors being ordered to continue to pay partial compensation benefits from March 1, 1989, to the date of her death as if she were still earning wages from SMART. See Welch, Worker's Compensation in Michigan: Law & Practice (3d ed, 1996), § 10.26; pp 10-21 to 10-22.

MCL 18.301(5)(e); MSA 17.237(301)(5)(e) provides:

> If the employee, after having been employed pursuant to this subsection for less than 100 weeks loses his or her job for whatever reason, the employee shall receive compensation based on his or her wage at the original date of injury.

The fact that the deceased aggravated her condition during her subsequent employment should not result in a reduction of her weekly benefit rate under § 301(5)(e), MCL 18.301(5)(e); MSA 17.237(201)(5)(e). To so hold would result in an absurdity. A worker who is fired or laid off during the first one hundred weeks of subsequent employment would be in a better position than a worker who had to stop working because of an aggravation of a preexisting work-related condition. If such were the law, any claimant

who is employed by a subsequent employer at lower wages is taking serious risk, because if an aggravation occurred, the motivation and effort involved in seeking subsequent employment would result in a drastically reduced worker's compensation rate, as here. This is clearly not what the Legislature intended. Nor would such a result be consistent with the remedial nature of the Worker's Disability Compensation Act.

I therefore dissent from that part of the majority opinion that holds otherwise.