RAHMAN v DETROIT BOARD OF EDUCATION

Docket Nos. 215628, 224623. Submitted January 10, 2001, at Detroit. Decided March 16, 2001, at 9:00 A.M. Leave to appeal denied, 464 Mich 872.

Saleem Rahman sought worker's compensation benefits for a back injury suffered during the course of his employment with the Detroit Board of Education. At the time of the injury on November 28, 1991, the plaintiff had dual employment, earning approximately forty-six percent of his weekly wages from his employment as a stock handler for the board and the remaining fifty-four percent of his wages as a boiler maintenance person for the city of Detroit. Although the plaintiff continued working for the board until the Christmas break, when he returned to work for the board in late January 1992 he found that back and leg pain made it impossible to continue with his employment with the board. Because the plaintiff's employment with the city was mostly sedentary, he continued his employment with the city until May 21, 1992, when, while attempting to loosen some bolts during the annual disassembly of the boiler that was part of his job, the plaintiff found that he was unable to do so because of the severe back pain that the effort caused. The plaintiff did not return to his employment with the city and testified that he has not been able to perform physical activities since that date. In June 1992, the plaintiff filed an application for benefits, seeking mediation or a hearing and listing the board as his employer and the city as another employer at the time of the injury. In October 1992, the board filed an application for a hearing; in that application the board identified the city as another employer and indicated that the Second Injury Fund should be added as a party. A magistrate approved a redemption agreement between the plaintiff and the city and thereafter, following evidentiary hearings, found that credible evidence on the record supported the conclusion that the plaintiff had suffered a work-related disabling injury on November 28, 1991, that the plaintiff's disability from his work with the city was the result of the November 28, 1991, injury, and that the plaintiff's work with the city did not aggravate the underlying pathology of the condition or independently contribute to the disability from the job with the city. The magistrate concluded that the Second Injury Fund had reimburse-

ment liability under MCL 418.372 and ordered an open award of benefits. The Worker's Compensation Appellate Commission affirmed the magistrate's decision. The fund sought leave to appeal, raising several issues, including an issue concerning the proper application of the two-year-back rule of MCL 418.381(2); MSA 17.237(381)(2). The Court of Appeals, while holding the question of granting leave to appeal in abeyance and retaining jurisdiction, remanded the matter to the WCAC for consideration of the issue regarding the application of the two-year-back rule. On July 15, 1999, the WCAC entered an order in which it concluded that the two-year-back period ran back from June 29, 1995, the date that the plaintiff had filed an application for hearing that specifically named the fund as an interested party, and that the fund's liability for reimbursement was limited to benefits payable after June 29, 1993. The Court of Appeals granted the fund's application for leave to appeal on October 20, 1999, but limited the appeal to those issues that had been raised in the fund's application and also excepted consideration of the fund's issue regarding the two-year-back rule because that issue had been resolved by the WCAC in the fund's favor (Docket No. 215628). On January 13, 2000, the plaintiff filed an application for a delayed cross appeal, which the Court of Appeals granted; however, the Court directed the parties to brief the question whether the Court had jurisdiction to grant an application for a delayed cross appeal that is filed more than thirty days after the final decision of the WCAC (Docket No. 224623). The appeals were consolidated.

The Court of Appeals *held*:

1. The WCAC must consider the findings of fact of a magistrate conclusive if they are supported by competent, material, and substantial evidence on the whole record. In the absence of fraud, the findings of fact made by the WCAC are considered by the courts to be conclusive if supported by any evidence. The WCAC found that the magistrate's finding that the plaintiff had suffered only one injury, that being the injury suffered on November 28, 1991, was supported by competent, material, and substantial evidence on the whole record. Because there was some evidence that there was but a single injury and no indication that the magistrate or the WCAC applied the wrong legal reasoning, the WCAC's conclusion that the plaintiff did not suffer a second injury while working for the city is conclusive.

2. Subsection 372(1)(b) of the Worker's Disability Compensation Act, MCL 418.372(1)(b), clearly and unambiguously provides that where an employee is engaged in more than one employment at the time of a personal injury and the employment causing the personal

injury provided eighty percent or less of the employee's average weekly wage at the time of the injury, the insurer of that employer is liable for that portion of the employee's weekly worker's compensation benefits as bears the same ratio to the employee's total weekly benefits as the average weekly wages from that employer bears to the employee's total weekly wages and that the Second Injury Fund is liable for the remainder of the weekly benefits. The statute further provides that the insurer of the employer in whose employment the employee is injured must pay benefits at the full rate of compensation and that the fund must reimburse that insurer the fund's portion of the benefits that are due. Because the mandate of the statute is clear and unambiguous, and because the statute provides that an employee is entitled to the entire amount of benefits due, there is no basis in the statutory language to support the fund's argument that it is entitled either to a release from its liability or to a credit against its liability by reason of the redemption entered into between the plaintiff and the city.

3. The coordination of benefits provision of MCL 418.354(1) provides that "the employer's obligation to pay or cause to be paid weekly benefits other than specific loss benefits" are to be reduced by certain pension payments. The provision clearly contemplates that only the employer making the pension payments is entitled to coordinate the pension payment against its liability for worker's compensation wage-loss benefits. Accordingly, any coordination of benefits resulting from the board's pension payments would go toward a reduction of the board's liability for wage-loss benefits.

4. Because the fund filed its application for leave to appeal to the Court of Appeals within thirty days of the WCAC's original order in this matter, complete jurisdiction of the matter was conferred on the Court of Appeals, including jurisdiction over a delayed cross appeal.

5. Because the city was identified as a second employer in the plaintiff's original application for a hearing filed on June 29, 1992, and because the fund's liability is derivative from the dual employment situation, the initial application vested jurisdiction over the fund despite the fact that the fund was not specifically named in that application. Accordingly, because the two-year-back rule applies from the date of the original application, June 29, 1992, and .the date of the injury on which the claim is based occurred less than one year before the filing of that application, application of the two-year-back rule has no effect.

Affirmed in part and reversed in part.

1. WORKER'S COMPENSATION — DUAL EMPLOYMENT — SECOND INJURY FUND — REDEMPTION AGREEMENTS.

    The Second Injury Fund is not entitled to credit against its derivative liability in a dual employment situation the amount of a redemption entered into between the injured employee and the employer whose employment did not cause the employee's personal injury and for whom the fund has derivative liability (MCL 418.372[1][b]).

2. WORKER'S COMPENSATION — COORDINATION OF BENEFITS — PENSIONS.

    The reduction in worker's compensation wage-loss liability permitted under the coordination of benefits provision of the worker's compensation act as the result of the payment of pension benefits to an injured employee is to be applied only to the wage-loss liability of the employer from whom the pension payment is received (MCL 418.354[1]).

3. WORKER'S COMPENSATION — APPEAL — JURISDICTION — DELAYED CROSS APPEALS.

    A timely application seeking leave to appeal to the Court of Appeals from an order of the Worker's Compensation Appellate Commission confers complete jurisdiction on the Court of Appeals, including jurisdiction over a delayed cross appeal.

4. WORKER'S COMPENSATION — TWO-YEAR-BACK RULE — SECOND INJURY FUND.

    An application by an injured employee for worker's compensation benefits that identifies the existence of a second employer vests jurisdiction over the Second Injury Fund for the purpose of the application of the two-year-back rule even if the Second Injury Fund is not specifically named in the application (MCL 418.381[2]).

*Edgar Jerome Dew*, for the plaintiff.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Gerald M. Marcinkoski*, Special Assistant Attorney General, for the Second Injury Fund.

*Kitch Drutchas Wagner DeNardis & Valitutti* (by *R. Michael O'Boyle* and *Christina A. Ginter*), for the Detroit Board of Education.

Before: HOEKSTRA, P.J., and WHITBECK and METER, JJ.

METER, J. In Docket No. 215628, defendant Second Injury Fund (SIF) appeals by leave granted the Worker's Compensation Appellate Commission's (WCAC) opinion and order affirming the magistrate's decision granting plaintiff an open award of benefits and ordering defendant SIF to reimburse defendant Detroit Board of Education (board) under MCL 418.372, in recognition of plaintiff's dual employment at the time of his injury. In Docket No. 224623, plaintiff cross appeals by leave granted the WCAC's decision concluding that the two-year-back rule, MCL 418.381(2), applied to plaintiff's claim for benefits. In Docket No. 215628, we affirm, and in Docket No. 224623, we reverse.

Plaintiff has a history of back problems. In late 1991, he worked for both the board and the city of Detroit (city). He worked as a vehicle operator and stock handler for the board, driving trucks and loading and unloading carts of food for delivery to schools. In his job with the city, plaintiff maintained a boiler room. This work was predominately sedentary.

On November 28, 1991, plaintiff suffered a back injury while working for the board. During a delivery of food to a school, he held up a cart that was tipping over. While holding the cart, plaintiff felt a pain in his back. He filed an injury report with the board on that day. Plaintiff continued working, despite his back pain, through December 23, 1991, the beginning of the school system's Christmas break. He returned to work for the board on January 27, 1992. After making deliveries to two schools, his back and right leg pain increased, and he could not continue working. He has never returned to work for the board.

After his November 1991 injury, plaintiff continued working for the city. Part of his job included an annual disassembly of the boiler. In the spring of 1992, plaintiff discovered that, because of his back condition, he could not perform this work. On May 21, 1992, plaintiff attempted to loosen bolts on a fire door on the boiler but could not do so. He experienced such severe back pain that he had to lie on a table. According to plaintiff, he could not do the work and stopped when he realized this. Plaintiff has not returned to his work with the city. He testified that his pain was greater after May 21, 1992, than after December 23, 1991, and that he can no longer perform physical activities.

Dr. Bruce M. Silverman, a neurologist, examined plaintiff on March 26, 1992. Plaintiff told Silverman about his back history and that he injured his back in December 1991 while performing heavy lifting at work. He told Silverman that he had back pain that radiated into his left leg and that he occasionally experienced weakness in that leg. On the basis of these statements, Silverman concluded that plaintiff suffered low back strain and noted the possibility of lumbar radiculopathy.

Silverman reviewed the results of a March 30, 1992, computerized tomography (CT) scan and an electromyogram (EMG). They revealed nerve root irritation and disc herniation at the juncture of the fourth and fifth lumbar vertebrae (L4-L5). Silverman diagnosed plaintiff with lumbar radiculitis or nerve root irritation. He thought plaintiff's condition might have been worsened by a degenerative disc. Silverman stated that plaintiff's condition could have been caused by the November 28, 1991, incident. He believed plaintiff

should be restricted from heavy lifting, bending, and twisting. According to Silverman, the heavy lifting plaintiff performed after March 26, 1992, as a boiler operator could have aggravated plaintiff's back condition.

Dr. Burt T. Weyhing, a diagnostic radiologist, interpreted the March 30, 1992, x-rays of plaintiff's lumbosacral spine. He found moderate degenerative arthritis at L4 and L5. He interpreted the March 30, 1992, CT scans as showing a large disc herniation on the right at L4-L5, noting that the L5 nerve root was obliterated. Weyhing viewed this as an indication that the nerve root was either compressed or displaced. He thought that the moderate degenerative changes could be consistent with the aging process but noted the possibility that a herniated disc could occur with specific lifting trauma.

Dr. Alvin Brown examined plaintiff on December 10, 1992. He diagnosed plaintiff as suffering from a right L4 radiculopathy secondary to a probable ruptured disc. Assuming the accuracy of plaintiff's description of the November 28, 1991, incident, Brown believed that that injury could have caused plaintiff's radiculopathy, noting that the condition would have arisen from an injury and not the aging process. Brown also testified that activities cannot aggravate a nerve root condition but can only exacerbate symptoms emanating from an existing condition.

Dr. Abelardo G. Contreras, a neurologist, performed the electrodiagnostic testing of plaintiff on March 30, 1992. He detected a mild peripheral neuropathy, which he stated was likely related to plaintiff's history of diabetes mellitus. He also noted radiculopathy at L4 on the right side, explaining that radiculopathy can

be caused by a herniated disc, arthritis, fractures, or tumors. Contreras stated that it was possible that the L4 radiculopathy was caused by the herniated disc. He could not be certain of the relationship between the mild neuropathy and the L4 radiculopathy, but he thought they were separate conditions.

Dr. William Higginbotham, III, an orthopedic surgeon, examined plaintiff at defendant's request on November 22, 1993. He found changes consistent with radiculopathy involving the right nerve root at the juncture of the fifth lumbar and first sacral vertebrae (L5-S1). He noted a large disc herniation at L5-S1, more on the right than the left, that obstructed the L4-L5 and L5 nerve roots. Although he could not be certain what caused the condition, Higginbotham testified that the November 28, 1991, incident could have caused plaintiff's back problem.

Defendant presented the testimony of Dr. Glafkos Theodoulou, an orthopedic surgeon, who had examined plaintiff on December 23, 1992. Theodoulou considered plaintiff's history, as well as EMG and nerve conduction studies performed in January 1993. He noted that the studies revealed a possible low-grade neuropathy compatible with diabetes and stated that the findings did not indicate radiculopathy. Theodoulou found no objective findings supporting plaintiff's complaints.

Dr. Joseph P. Femminineo, who is board certified in electrodiagnostic medicine and physical medicine and rehabilitation, performed an EMG and nerve conduction study on January 9, 1993, at Theodoulou's request. Femminineo interpreted the tests as showing borderline peripheral sensory motor neuropathy, compatible with a history of diabetes mellitus. He

found no suggestion of lumbar radiculopathy and testified that it is not possible to confuse peripheral neuropathy with lumbar radiculopathy.

The magistrate accepted the testimony of Drs. Brown, Higginbotham, and Silverman as the most persuasive medical evidence. Considering this evidence and plaintiff's testimony, the magistrate concluded that "plaintiff was disabled from his work at both the Board and the City as of November 28, 1991, even though he was able to continue working at the City after November 28, 1991 through May 21, 1992 because he did not have to do any heavy [sic] until then." The magistrate also noted that Drs. Brown, Higginbotham, and Silverman stated that the November 28, 1991, incident could have caused the herniated disc, which in turn caused the radiculopathy. Although noting that the doctors' testimony indicated only a possibility that the November 28, 1991, incident caused plaintiff's disabling condition, the magistrate found, on the basis of all the credible evidence, that plaintiff sustained a work-related disabling injury on November 28, 1991.

The magistrate noted that plaintiff was able to continue working for the city until May 21, 1992, when he attempted to disassemble the boiler. The boiler disassembly work was outside the restrictions imposed by Dr. Silverman. Therefore, the magistrate concluded, plaintiff was disabled from performing the boiler disassembly.

The magistrate found that plaintiff's disability from his job with the city was the result of the November 28, 1991, injury. The magistrate further found that plaintiff's work with the city did not aggravate the underlying pathology of his condition and that any

exacerbation of his symptoms was temporary and did not contribute independently to his disability from his boiler operator job. The magistrate concluded that plaintiff was disabled from both jobs as of November 28, 1991, but that he did not suffer a wage loss at the board until December 24, 1991, or at the city until May 22, 1992. The magistrate concluded that the SIF had reimbursement liability under MCL 418.372.

The magistrate granted plaintiff an open award of benefits. The SIF and the board appealed the magistrate's decision. In an August 16, 1998, opinion and order, the WCAC affirmed the magistrate's decision. The SIF applied for leave to appeal (Docket No. 215628). This Court remanded the matter to the WCAC for consideration of the issue regarding application of the two-year-back rule, MCL 418.381(2). On remand, the WCAC concluded that the two-year-back rule applied, limiting plaintiff's recovery of benefits to those payable from June 29, 1993, forward. This Court granted the SIF's application, with the exception of its issue regarding the two-year-back rule because that issue had been decided in the SIF's favor on remand. Plaintiff filed an application for a delayed cross appeal (Docket No. 224623). The Court granted leave to appeal on both applications, directing the parties to address whether this Court has jurisdiction over the cross appeal.

I. STANDARD OF REVIEW

The WCAC must consider the magistrate's findings of fact conclusive if they are supported by competent, material, and substantial evidence on the whole record. MCL 418.861a(3). In the absence of fraud, the findings of fact made by the WCAC shall be considered

conclusive. MCL 418.861a(14). In *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691, 709-710; 614 NW2d 607 (2000), our Supreme Court clarified the standards of review applied in worker's compensation cases:

> The WCAC must review the magistrate's decision under the "substantial evidence" standard, while the courts must review the WCAC's decision under the "any evidence" standard. Review by the Court of Appeals and this Court begins with the WCAC's decision, not the magistrate's. If there is any evidence supporting the WCAC's factual findings, and if the WCAC did not misapprehend its administrative appellate role in reviewing decisions of the magistrate, then the courts must treat the WCAC's factual findings as conclusive.

This Court may review questions of law involved with any final order of the WCAC. MCL 418.861a(14). The WCAC's decision may be reversed if it "operated within the wrong legal framework" or based its decision on "erroneous legal reasoning." *O'Connor v Binney Auto Parts*, 203 Mich App 522, 527; 513 NW2d 818 (1994).

## II. INJURY

The WCAC concluded that the magistrate's finding that plaintiff suffered only one injury, on November 28, 1991, was supported by competent, material, and substantial evidence on the whole record. It considered the evidence and noted plaintiff's testimony that he realized he could not disassemble the boiler because of his back injury and thus stopped before performing this work. On the basis of this evidence, the WCAC agreed with the magistrate's conclusion that there was a single injury.

The SIF challenges the WCAC's finding that plaintiff suffered only one injury. The SIF is not claiming that the WCAC misapprehended or misapplied its appellate standard of review. Therefore, the WCAC's finding that plaintiff suffered only one injury must be considered conclusive if there is any evidence to support it, *Mudel, supra* at 709-710, and if the magistrate and the WCAC applied the correct legal reasoning. *O'Connor, supra* at 527. The determination regarding disability and whether particular employment has aggravated a condition to the point of disability are factual findings. *Dressler v Grand Rapids Die Casting Corp*, 402 Mich 243, 250; 262 NW2d 629 (1978), superseded in part by statute as stated in *Arnold v General Motors Corp (On Remand)*, 220 Mich App 494, 498; 560 NW2d 59 (1996). We find that the evidence supports the WCAC's finding and that the magistrate and the WCAC applied the correct legal reasoning.

Plaintiff testified that he worked for the city until May 1992, when he and his crew were required to disassemble the boiler for its annual cleaning. Plaintiff attempted to loosen the bolts on a fire door on the boiler but could not do so. After doing this, his back hurt badly and he had to lie on a table. Plaintiff explained on cross-examination that after the November 1991 injury and while he worked for the city, his back was very painful. He was unable to disassemble the boiler because of his back injury. He could not do the work and stopped when he realized this, which was before he began the disassembly work.

The SIF argues that plaintiff's testimony indicates that plaintiff suffered a second injury. We disagree. As stated in *Mullins v Dura Corp*, 46 Mich App 52, 55-56;

207 NW2d 404 (1973), quoting 3 Larson, Workmen's Compensation Law, § 95.12, pp 508.130-508.133:

> "The Massachusetts-Michigan rule in successive-injury cases is to place full liability upon the carrier covering the risk at the time of the most recent injury that bears a causal relation to the disability.
>
> *"If the second injury takes the form merely of a recurrence of the first, and if the second incident does not contribute even slightly to the causation of the disabling condition, the insurer on the risk at the time of the original injury remains liable for the second. . . . This group . . . includes the kind of case in which a man has suffered a back strain, followed by a period of work with continuing symptoms indicating that the original condition persists, and culminating in a second period of disability precipitated by some lift or exertion.*
>
> "On the other hand, if the second incident contributes independently to the injury, the second insurer is solely liable, even if the injury would have been much less severe in the absence of the prior condition, and even if the prior injury contributed the major part to the final condition. This is consistent with the general principle of the compensability of the aggravation of a preexisting condition." [Emphasis in *Mullins*.]

See also *Dressler, supra* at 253-254, and *Arnold, supra* at 497-498.

There is evidence to support the WCAC's conclusion that plaintiff's disability from his job with the city was the result of the November 28, 1991, incident. Dr. Brown testified that activities cannot aggravate nerve root conditions such as radiculopathy but can exacerbate symptoms. In Dr. Brown's opinion, plaintiff's attempt to disassemble the boiler would have exacerbated his symptoms but would not have aggravated his underlying condition. The evidence indicates that plaintiff continued to suffer the symptoms that arose

from the November 28, 1991, incident and performed work within his restrictions at his job with the city. He exerted himself in his boiler operator job, and this exertion precipitated his disability from that job. Therefore, under the reasoning of *Mullins*, the WCAC correctly concluded that plaintiff did not suffer a second injury while working for the city in May 1992.

### III. THE SIF'S REIMBURSEMENT LIABILITY

Plaintiff filed his application for hearing in June 1992, indicating the board as his employer and the city as a second employer. In February 1997, the magistrate approved plaintiff's redemption agreement with the city. Through this agreement, plaintiff redeemed his claim for $15,000. The SIF, raising an issue of first impression, argues that plaintiff's redemption with the city either eliminates or reduces the SIF's reimbursement responsibility. We disagree.

Resolution of this issue requires consideration of the statutory definition of "average weekly wage," MCL 418.371(2), and the dual employment provisions, MCL 418.372. The purpose of statutory construction is to determine and give effect to the intent of the Legislature. *DiBenedetto v West Shore Hosp*, 461 Mich 394, 402; 605 NW2d 300 (2000). The most reliable evidence of the Legislature's intent is the words used in a statute. *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999), quoting *United States v Turkette*, 452 US 576, 593; 101 S Ct 2524; 69 L Ed 2d 246 (1981). If statutory language is clear and unambiguous, it must be enforced as written, and judicial construction is not warranted. *Rowell v Security Steel Processing Co*, 445 Mich 347, 353; 518 NW2d 409 (1994). The words of the statute must be given their

ordinary and plain meaning; only if the language is ambiguous may the courts look beyond the statute to determine the intent of the Legislature. *DiBenedetto, supra* at 402.

The Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq.*, as a remedial statute, should be liberally construed to grant, not deny, benefits. *DiBenedetto, supra* at 402. Although statutory interpretation is a question of law, this Court typically gives considerable deference to the agency's construction of statutory provisions, providing that interpretation is not clearly incorrect. *Jones-Jennings v Hutzel Hosp (On Remand)*, 223 Mich App 94, 105; 565 NW2d 680 (1997).

MCL 418.372 provides, in relevant part:

> (1) If an employee was engaged in more than 1 employment at the time of a personal injury or a personal injury resulting in death, the employer in whose employment the injury or injury resulting in death occurred is liable for all the injured employee's medical, rehabilitation, and burial benefits. Weekly benefits shall be apportioned as follows:
>
> (a) If the employment which caused the personal injury or death provided more than 80% of the injured employee's average weekly wages at the time of the personal injury or death, the insurer or self-insurer is liable for all of the weekly benefits.
>
> (b) If the employment which caused the personal injury or death provided 80% or less of the employee's average weekly wage at the time of the personal injury or death, the insurer or self-insurer is liable for that portion of the employee's weekly benefits as bears the same ratio to his or her total weekly benefits as the average weekly wage from the employment which caused the personal injury or death bears to his or her total weekly wages. The second injury fund is separately but dependently liable for the remainder of the weekly benefits. The insurer or self-insurer has the obligation to pay the employee or the employee's depen-

dents at the full rate of compensation. The second injury fund shall reimburse the insurer or self-insurer quarterly for the second injury fund's portion of the benefits due the employee or the employee's dependents.

"Average weekly wage" is defined in MCL 418.371(2) as "the weekly wage earned by the employee at the time of the employee's injury in all employment, inclusive of overtime, premium pay, and cost of living adjustment, and exclusive of any fringe or other benefits which continue during the disability."

The language of these statutes is clear and unambiguous, and therefore judicial construction is not permitted. *Rowell, supra* at 353. First, it is clear that determination of plaintiff's average weekly wage is based on considering his weekly wage earned in his employment with both the board and the city. Plaintiff earned approximately forty-six percent of his weekly wages from his employment with the board and the remaining fifty-four percent in his employment with the city. Therefore, because plaintiff earned less than eighty percent of his average weekly wage in his employment with the board (the job on which he was injured), subsection 372(1)(b) applies. According to the clear language of this provision, the board must pay plaintiff's benefits, determined by considering his wages from both it and the city, in full. The board is then entitled to seek reimbursement from the SIF of an amount of benefits that is equal to the proportion of plaintiff's average weekly wages for which the city is accountable.

The language of the provision does not provide a basis on which to credit the SIF with plaintiff's redemption with the city, because it mandates the

board's payment to plaintiff of the entire amount of benefits due and entitles the board to seek reimbursement from the SIF. There is simply no contemplation of a redemption within the provisions. We are mindful of the principles recently recognized by this Court in *Gilbert v Second Injury Fund (On Remand)*, 244 Mich App 326, 332; 625 NW2d 116 (2001), quoting *Tyler v Livonia Public Schools*, 459 Mich 382, 392, n 10; 590 NW2d 560 (1999): " 'Our role as members of the judiciary is not to determine whether there is a "more proper way," that is, to engage in judicial legislation, but it is rather to determine the way that was in fact chosen by the Legislature.' " Thus, applying the clear language of the statute as written, we must reject the SIF's argument. We acknowledge that *Thick v Lapeer Metal Products*, 419 Mich 342; 353 NW2d 464 (1984), and *Stanley v Hinchcliffe & Kenner*, 395 Mich 645; 238 NW2d 13 (1976), provide some support for the SIF's position, in that they set forth a policy against double recovery in worker's compensation cases. Nonetheless, we do not consider these cases binding because they did not address the precise issue here: whether a plaintiff's redemption with a second employer eliminates or reduces the SIF's reimbursement responsibility under MCL 418.372. Accordingly, we choose to adhere to the statutory scheme chosen by the Legislature, see *Tyler, supra* at 392-393, n 10, and we therefore reject the SIF's argument.

## IV. COORDINATION OF BENEFITS

Plaintiff receives a pension from the board. In a second issue of first impression, the SIF argues that the amount it is required to reimburse the board

should be calculated after plaintiff's pension is deducted from the total amount of weekly benefits due to plaintiff on the basis of his employment with both the board and the city. We disagree.

MCL 418.354, the coordination of benefits provision, applies if an employee receives worker's compensation benefits at the same time he receives pension or retirement payments pursuant to a plan or program maintained or established by an employer. Subsection 354(1) provides that "the employer's obligation to pay or cause to be paid weekly benefits other than specific loss benefits . . . shall be reduced by [specified] amounts . . . ." A plain reading of the subsection indicates that the employer's obligation to pay the employee benefits may be reduced by the amount of pension the employer pays to the employee.

We reject the SIF's argument that the total amount of worker's compensation benefits payable to plaintiff should be reduced by the amount of the pension benefits plaintiff receives from the board. Again, we consider the clear and unambiguous language of the statute. See *DiBenedetto, supra* at 402. Section 354 provides for a reduction in an employer's obligation to pay benefits if *that employer* provides the employee a pension. This reduction is clearly premised on the fact that the employer is providing another wage benefit to the employee; the statute allows the employer to coordinate that benefit with its obligation to pay worker's compensation wage-loss benefits to the employee. It is apparent from the language of the statute that the Legislature intended that the employer whose employment caused an injury alone

may take advantage of the coordination provisions. There is no suggestion that the SIF, in a dual employment situation, may take advantage of the injury-employer's entitlement to coordination. Therefore, the SIF's argument is rejected.

### V. CROSS APPEAL JURISDICTION

The SIF filed its application for leave to appeal on November 13, 1998, within thirty days of when the WCAC mailed its order. Following a remand to the WCAC, this Court granted the SIF's application for leave to appeal on October 20, 1999. Plaintiff filed an application for a delayed cross appeal on January 13, 2000. In granting plaintiff's application for a delayed cross appeal, this Court directed the parties to address the issue whether it has jurisdiction to entertain the delayed cross appeal. We conclude that we have jurisdiction over plaintiff's cross appeal.

MCL 418.861 and MCL 418.861a(14) allow an aggrieved party thirty days from the date the WCAC mails its order within which to file an application for leave to appeal. This period has been construed to preclude delayed applications for leave to appeal final decisions of the WCAC. *Wszola v Robert Carter Corp*, 187 Mich App 372, 374; 468 NW2d 57 (1991).

However, in *Armstrong v Commercial Carriers, Inc*, 341 Mich 45; 67 NW2d 194 (1954), our Supreme Court held that where the application for leave to appeal is timely filed, the Court had jurisdiction over a delayed cross appeal. The Court explained:

> Appellants conferred jurisdiction upon this Court within the statutory limitation of time by applying for leave to

appeal. When this Court granted said leave, this Court had complete jurisdiction and there is no limitation either by statutory provision or court rule preventing this Court, in its discretion, granting to plaintiff the right to bring before this Court his contention on cross appeal. [*Id.* at 50.]

The SIF filed its application for leave to appeal within thirty days after the WCAC mailed its order. Therefore, this Court has jurisdiction over plaintiff's delayed cross appeal.

### VI. APPLICATION OF THE TWO-YEAR-BACK RULE

In Docket No. 224623, plaintiff argues that, on remand, the WCAC incorrectly determined that for the purpose of establishing the SIF's liability of reimbursement plaintiff's June 26, 1995, petition for a hearing, in which the SIF was specifically named, controlled and that the two-year-back rule, MCL 418.381(2), applied, precluding plaintiff from recovering benefits from the SIF for any period before June 29, 1993. We conclude that the WCAC's decision was erroneous and that application of the two-year-back rule has no effect on plaintiff's claim for benefits.

The record establishes that plaintiff filed his application for mediation or hearing on June 29, 1992. In that application, plaintiff identified the board as his employer and the city as another employer at the time of his alleged injury. In an application filed October 16, 1992, the board identified the city as another employer of plaintiff and checked a box adding the SIF to the action. The SIF filed a response on December 2, 1992. Later applications and amended applications filed by plaintiff name and identify the city as another employer.

The two-year-back rule is set forth in MCL 418.381(2). It provides:

> Except as provided in subsection (3) [involving nursing or attendant care], if any compensation is sought under this act, payment shall not be made for any period of time earlier than 2 years immediately preceding the date on which the employee filed an application for a hearing with the bureau.

In *Bordas v Detroit General Hosp*, 100 Mich App 31, 32; 298 NW2d 655 (1980), the plaintiff filed a petition for hearing on June 29, 1972, claiming he sustained personal injuries resulting from his employment with the defendant. On June 13, 1973, the plaintiff filed an amended petition adding the SIF as a party and alleging he suffered total and permanent disability. *Id* at 32-33. The dispute in the case involved which of the two petitions should be used as the "measuring point for the two-year-back provision." *Id.* at 33.

The *Bordas* Court likened the two-year-back rule to a statute of limitations. It determined that the two-year-back rule is tolled when the application for hearing is filed. *Id.* at 33. The Court noted that the plaintiff filed an amended petition adding the SIF and that the SIF's "rights were protected by prompt, ongoing, and uninterrupted notice." *Id.* at 34. The Court further reasoned:

> Under MCL 418.847; MSA 17.237(847), the injured employee is required to file an application stating " . . . the general nature of any claim as to which any dispute or controversy may have arisen . . . ." Plaintiff is required only to state the employer, along with the general nature of a potential claim. The jurisdiction of the hearing referee then

vests simultaneously over the case against the employer and against the Second Injury Fund. The fund's liability is derivative from that of the employer. If liability is derivative, then it may also be said to be parallel, thus precluding a due process and notice argument by defendant. The statute and rules governing the application for benefits do not require that the employee list the Second Injury Fund as a defendant. Moreover, the statute provides for reimbursement to the employer by the Second Injury Fund where total and permanent disability differential benefits have been paid.

In the instant case, we are not dealing with two separate petitions in which one was withdrawn or dismissed. In such a situation, there is a danger that the parties may not be aware of the proceedings against them for an indefinite period of time. Here we have an ongoinng [sic] case. While it is true that the fund must pay additional benefits, these benefits were determined to be due to the employee. It is more consistent with the spirit of the act, being socially remedial, to consider the initial application as the measuring date for the two-year-back rule. [*Id.* at 34-35 (citations omitted).]

At the time plaintiff filed his application, on June 29, 1992, he identified the city as a second employer. The board filed an application in October 1992, checking a box to add the SIF to the action. Following *Bordas*, plaintiff's initial application vested jurisdiction over the case against the board and the SIF. Plaintiff was not required to list the SIF as a defendant. Moreover, the board brought the SIF into the action in October 1992, within one year after plaintiff's November 28, 1991, injury.

We find that the two-year-back rule applies from the date plaintiff filed his first application: June 29, 1992. This was within one year of the date of plaintiff's injury in his employment with the board, and

therefore application of the two-year-back rule has no effect. The WCAC erred in concluding otherwise.

Affirmed in part and reversed in part.